The court charged the jury as matter of law, that if the train bearing the plaintiff had stopped at a station, *Page 369 
and before it started again he offered to pay his fare, that any subsequent act of the defendant committed in the effort to expel him was unlawful, and rendered it liable for damages occurring therefrom. To this charge there was an exception.
We think this direction was erroneous. The facts taken in their most favorable aspect for him, showed that the plaintiff boarded the defendant's train at Hoboken, intending to ride to Montclair. When the conductor reached him in the process of collecting fare, the plaintiff exhibited a ticket purporting to be good for a passage on defendant's cars from Montclair to Hoboken. This the conductor refused to accept, and requested the plaintiff to pay his fare. He refused and demanded a passage on the ticket. The conductor told him he should be obliged to put him off unless he paid his fare. The plaintiff then replied, "I will sue the company if you put me off." An issue was thus deliberately and intelligently made between the parties. The conductor called for assistance, and a brakeman and baggageman appeared and began the removal. The plaintiff resisted with force the effort to remove him, and continued the struggle without cessation from his seat until he was finally landed on the track outside the car.
At the time the plaintiff reached the car door, and while he was near it on the platform, he stated to those engaged in ejecting him that he did not want to be put off, and would pay his fare; but notwithstanding this offer the expulsion continued and plaintiff was ejected.
It is not disputed but that the ticket tendered, was insufficient to entitle the plaintiff to a ride from Hoboken to Montclair, nor but that the conductor was justified in ejecting him from the cars for non-payment of fare; but it is claimed that the moment the plaintiff declared his willingness to pay fare, the right of the defendant to continue the expulsion eoinstanter ceased, and the right of the plaintiff as a proposed contractor with the corporation commenced.
This claim is founded upon the assumption that an individual who is in the process of being lawfully and necessarily ejected by force, from the cars in pursuance of statutory authority, stands *Page 370 
in the same relation to the carrier as an unobjectionable person tendering fare, and asking passage on its trains from a regular station.
It was held in O'Brien v. N.Y.C. H.R.R.R. Co. (80 N.Y. 236), that if the stoppage of a train is rendered necessary to expel a passenger therefrom, for a fractious refusal to pay fare, that he does not by offering to pay it before expulsion, become entitled to continue the trip. This authority is quite conclusive upon the question, that a mere offer to pay fare under all circumstances does not establish new relations between the passenger and carrier, and entitle the passenger to continue his passage. Hibbard v. N.Y. E.R.R. Co. (15 N.Y. 455, 460) is to the same effect. There the passenger had bought a ticket which entitled him to transportation from Hornellsville to Scio. After having once shown his ticket to the conductor, he refused to show it again, upon a second request, at a point between the commencement and terminus of his journey. After the train had been stopped for the purpose of expelling him therefrom for such refusal he exhibited his ticket, but the defendant put him off the train notwithstanding. It was held that this expulsion was justifiable because of the refusal of the passenger to comply with the reasonable requirements of the carrier.
Although it must be assumed upon the evidence in this case that the transaction in question occurred at a stopping place, where passengers had the right to get on and off the cars, yet it should be borne in mind that it was not a regular station, and the ordinary time of stoppage at that place was momentary and was required by law as a measure of precaution in cases wherever railroads crossed each other at grade. Such a transaction as that in question, would necessarily cause a detention of a train for a longer or shorter period, according to the circumstances, and the proof in this case shows the detention to have been three minutes.
When a passenger by an illegal refusal to pay fare has rendered it the duty of a conductor, in enforcing the reasonable rules and regulations of the company, to eject him from the cars, and the refusal and resistance of the passenger continues *Page 371 
until after force has been required and applied, to enforce such rule, we think he cannot make the continuance of the process of expulsion unlawful, by an offer to pay fare during its progress.
Having invited an appeal to force, the passenger cannot at his option, reserve the privilege of shielding himself from its application, by invoking the protection of a contract, the implied conditions of which he has violated. The trial of his right, in a manner which he has deliberately selected, cannot be arrested by him when its course is not proceeding to his satisfaction, so as to make its continuance by the other party unlawful.
The contention of the respondent proceeds upon the assumption that any person by tendering fare, has established a right to passage upon the trains of a carrier of passengers. This, we think, is not correct. Such a carrier is not required unconditionally to accept all persons who offer themselves for transportation, and tender fare. It has been held that they may lawfully decline to receive or carry those who refuse, after knowledge of the same, to conform to the reasonable rules of the company, or to pay their fare, or purchase tickets before entering the cars, and that it may lawfully eject from the train persons committing these offenses. (2 Rorer on Railroads, 958 etseq.)
In such a case as this, we think a passenger who resists the lawful requirement of the company, to the extent of provoking a breach of the peace, and the exhibition of violence in the presence of other passengers cannot, as matter of law, demand a passage upon the train where such an exhibition has been made.
A railroad company has the right, and it is its duty to enforce order in its cars, and to eject therefrom those who by indecent or obscene language, or by violent and boisterous behavior, cause danger, discomfort or annoyance to other passengers; and in the exercise of this right, the officers of the company must determine as to the propriety of their action, being responsible for the reasonable exercise of their discretion. *Page 372 
(1 Redf. on Railways, 91, 92, 105; People v. Jillson, 3 Park. Cr. 234; People v. Caryl, id. 326; Rorer on Railroads, 958, 959.)
It would be quite absurd to say, that one whose unlawful conduct had provoked a breach of the peace, should be able to throw upon his adversaries the blame of the affray, by simply withdrawing his challenge, and declaring his change of mind. He has provoked an unlawful affray and his rights are to be determined by the rules which apply to persons thus engaged. The act of expulsion is made legal by his unlawful refusal to pay fare, and any necessary force required to completely execute it, would be justifiable.
It is, under the circumstances of this case, immaterial that this affray occurred at a station, as that fact is important only in considering the rights of parties with reference to new relations, or as bearing on the right of the carrier to determine the time and mode of expulsion. The case of O'Brien holds that when an oral controversy as to the payment of fares arises at or before arrival at a regular station, and while at such station, and before force has been applied to effect the expulsion, the passenger offers unqualifiedly to pay his fare, and tenders the money therefor, that his subsequent expulsion under such circumstances would be unlawful, and we think decides nothing farther than this.
In this case it may also well be said that the measures rendered necessary by the conduct of the plaintiff would probably involve the detention of the train and the consequences deprecated in the Hibbard Case and bring it within the letter of the rule there stated.
The judgment should be reversed and a new trial ordered, with costs to abide the result.
All concur, except ANDREWS and DANFORTH, JJ., dissenting.
Judgment reversed. *Page 373