91 349
157a 445

NATHANIEL JARVIS, JR., Plaintiff, *v.* SARAH LYNCH, as Executrix, etc., of WILLIAM LYNCH, Deceased, and Others, Defendants.

*Ejectment — proof as to the identity of property described in old deeds with that described in the complaint — Dongan charter — property on the Harlem river between high and low-water marks — street opening proceedings, as proof of title — no presumption of a grant from permission to cut grass.*

Upon the trial of an action in ejectment it is necessary that the deeds introduced by the plaintiff to prove title should locate the property with sufficient accuracy to enable a court or jury to determine whether the same property referred to in the deed is described by the words of the complaint.

Where it appeared that the property described in a complaint in an action of ejectment was at some period of time situated between high and low-water marks of the Harlem river, and that the city of New York, prior to the conveyances under which the defendants asserted title, claimed, by virtue of the Dongan charter, to be the owner of all lands upon that river between such marks, the court considered that the description of the premises, made in 1816 by commissioners appointed in a proceeding to open a street, and which gave one of the boundaries of the premises as the Harlem river, could not be said to include of necessity the part which lay between high and low-water marks.

The effect of proceedings taken by a municipality to open a street is merely to vest title in the city to the lands taken; it has no other effect.

Such assessments are levied upon property and not upon owners. The action of the commissioners, appointed in such a proceeding, in levying assessments upon property described as owned by certain individuals, does not amount to a judicial determination, binding upon parties and privies, that the persons named had title to the lands assessed.

Proof that a prior grantor of the plaintiff, occasionally and as late as 1869, gave persons permission to cut grass upon the *locus in quo,* which was neither fenced nor cultivated, will not authorize the presumption of a grant.

MOTION by the plaintiff, Nathaniel Jarvis, Jr., for a new trial upon a case containing exceptions, ordered to be heard at the General Term in the first instance upon the dismissal of the complaint directed by the court after a trial before the court and a jury at the New York Circuit on 4th day of April, 1889.

*Anderson Price* and *Charles Blandy,* for the plaintiff.

*Charles E. Miller, Henry H. Anderson* and *Geo. Welwood Murray,* for the defendant Sarah Lynch.

Per Curiam:

This action, which is one of ejectment to recover possession of premises consisting of a block of land in the city of New York, bounded by One Hundred and Fifty-fifth and One Hundred and Fifty-sixth streets, Eighth avenue and Exterior street, extending along the Harlem river, has been twice tried. The first trial resulted in a dismissal of the complaint, and the judgment entered thereon was affirmed upon appeal to this court upon the ground that it was impossible to determine, from the descriptions in the deeds and grants through which plaintiff claimed title, whether they affected the premises in controversy. (13 N. Y. Supp. 703.) The evidence satisfactorily establishes that these premises formerly lay between high-water mark and low-water mark of the Harlem river, and the defendants insist, upon the authority of *The Mayor, etc.*, v. *Hart* (95 N. Y. 443), that the title thereto did not pass to the freeholders and inhabitants of Harlem by the Nicolls patent of 1666, as claimed by the plaintiff, but, instead, that the title thereto became vested in the mayor, aldermen and commonalty of the city of New York by the Dongan charter of 1686, and it may be observed in passing that the argument in that case strongly supports the defendants' contention, although there is present that opportunity for distinction between the cases which was pointed out by this court on the former appeal. Passing to the question, whether the deeds put in evidence by the plaintiff located the property with sufficient accuracy to enable a court or jury to determine whether it is described by the words of the complaint, we observe that the plaintiff has not overcome the defects in the proof which were pointed out by this court on the former appeal. Upon this trial he claims title through precisely the same deeds or grants and none other. Assuming that the title to the premises in controversy passed by the Nicolls patent of 1666 to the freeholders and inhabitants of Harlem, and that such property can be located with sufficient accuracy in the several mesne conveyances between and including the deed from the freeholders and inhabitants of Harlem to Barent Waldron, and the deed from John Myer to Abraham Myer in 1743, still the plaintiff falls far short of the proof requisite to maintain his action, for the subsequent conveyances do not contain such a description of the premises in question as make it possible to locate it as a part of the property described in the grants.

The plaintiff testified that he received, as a part of his muniments of title, an unrecorded deed from Abraham Myer to Arent Myer, dated March 21, 1746, and an effort was made to prove it as a lost instrument, and to show that the premises described therein were the same as in the deed of 1743 from John Myer to Abraham Myer. We have examined the folios to which counsel referred as proof of his assertion, that the lost deed was admitted in evidence, and they do not seem to us to sustain his position. It is true that the plaintiff testified that he had had such a deed and that it was mislaid, and upon being shown a memorandum he testified it was copied from his memorandum book which contained a copy of the deed.

The memorandum being handed to him by his counsel with a request that he read it, an objection was interposed by the counsel for the defendants, and the court said: " You have, according to Mr. Jarvis' testimony, a copy of the original deed in his record book still in his possession ; why not bring that down ? " This suggestion of the court seems to have been acquiesced in, for the counsel for the plaintiff at once proceeded to inquire of him with reference to other papers which were subsequently put in evidence, and we have not been able to find that the subject was again referred to. But if it can be assumed that the testimony elicited from the plaintiff while his counsel was attempting to lay a foundation for the introduction of secondary evidence constituted sufficient proof of the instrument as a lost deed, and established that it contained a description like that in the deed from John to Abraham Myer, then the fact is that from the date of such deed, March, 1746, every instrument, whether of will or deed, through which plaintiff claims title was without such a description as would enable a court or jury to say that the premises in question were described therein.

As each of such instruments was referred to on the former appeal their further consideration is not needful. The plaintiff introduced in evidence the proceedings for the opening of Eighth avenue, which were confirmed in the year 1816. The commissioners' report states " that the said Aaron Bussing is also seized in fee of and in certain lands and premises easterly of and adjoining to the last above-described piece or parcel of land which said last-mentioned adjoining lands and premises are situated in the said Ninth

ward of the said city of New York, and are bounded northwesterly in front by the last above-described piece or parcel of land; northeasterly by Harlem river aforesaid; southeasterly by the center line between the said Eighth avenue and the Seventh avenue, and southwesterly by lands and premises now or lately belonging to the above-named Cadwallader D. Colden."

In considering what value, if any, this evidence has, it may be observed:

*First.* That in the absence of measurements it is difficult, to say the least, to determine whether any part of the premises in controversy was included within this description.

At some period of time this property was situated between high and low-water mark, and the city of New York, prior to the conveyances under which the defendants claim title, claimed to be the owner of all the land between high and low-water mark on the Harlem river under the Dongan charter. So a description made by the commissioners appointed in a proceeding to acquire land for city purposes, which gives as one of its boundaries the Harlem river, cannot be said to necessarily include premises lying between high and low-water mark.

*Second.* While the effect of such a proceeding is to vest in the city the title to lands taken for the purpose of a street, it has no other effect. The commissioners appointed by the court in such cases endeavor to obtain the names of the owners of the property taken, but if this cannot be accomplished, the city may, nevertheless, acquire title to the property upon compliance with the provisions of the statute authorizing the making of an award for damages to unknown owners.

The other feature of the proceeding relates to the assessment upon property benefited to defray the expense of the opening of the street.

While the names of the owners of the property are usually given, the assessment, nevertheless, is upon the property benefited, not upon the individual.

And any suggestion that such action upon the part of the commissioners amounted to a judicial determination, binding upon all parties and their privies, that the persons named had title to the property assessed, is too absurd for serious consideration.

On this trial, as on the former one, the plaintiff introduced evidence of alleged acts of possession on the part of Aaron Bussing for the purpose of proving seizin of plaintiff's grantors. For that purpose, as was said on the former appeal, the evidence was of no value in the absence of evidence of title in Bussing. It is also claimed that the evidence of possession introduced on the part of the plaintiff covered such a period of time as requires a grant to be presumed. We do not understand that it can be given that effect.

The premises were never fenced in nor cultivated, nor were they ever capable of cultivation prior to the time when the defendants filled in the property at great labor and expense.

It does appear, from the testimony of the plaintiff, that one of the devisees of Aaron Bussing, during a period of years, occasionally gave permission to parties to cut grass on it. The interviews occurred, according to the plaintiff, at the residence of the devisee, nearly a half a mile from the premises in controversy. The plaintiff further testified that when he gave permission for the cutting, the uncle pointed towards the river and in the direction of the meadow. How much, if any, of the land in controversy was included in such "pointing out" by the uncle it is not easy to determine. It seems quite clear that the witness had a very indefinite recollection on the subject, for, according to his testimony, the period of time during which he knew grass to have been cut extended down to 1869, whereas it further appeared from his testimony that upon his return from a visit to South America, in 1856, he found the property filled in. If it satisfactorily appeared that the cutting of grass was upon the property in question, such evidence would not be of sufficient value to authorize a presumption of a grant. (*Price* v. *Brown*, 101 N. Y. 669.)

We do not think the proof on this trial requires any different disposition of the case than was made on the former appeal.

The exceptions should be overruled, and judgment ordered for the defendant, with costs.

Present — VAN BRUNT, P. J., PARKER and PATTERSON, JJ.

Exceptions overruled and judgment ordered for defendant, with costs.