SAMUEL B. BEHR, Respondent, *v.* ERIE RAILROAD COMPANY, Appellant.

*Railroad — refusal to pay fare — where force has been rightly used, to remove a passenger refusing to pay, he cannot by offering to pay entitle himself to remain.*

Where a passenger on a railroad train refuses to pay any fare for a boy who accompanies him, upon the ground that such boy is under five years of age, which is disputed by the conductor, and interferes to prevent the conductor's removing the boy, and upon the arrival of the train at a station, the conductor, with the assistance of a brakeman, proceeds to eject the passenger, the fact that, after they have, by physical force, pushed him out of the car upon the platform, the passenger offers to pay the boy's fare, does not make it unlawful for the conductor to refuse to accept the fare and continue the process of expulsion.

APPEAL by the defendant, the Erie Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Rockland on the 16th day of May, 1901, upon the verdict of a jury for $350, and also from an

order entered in said clerk's office on the 13th day of June, 1901, denying the defendant's motion for a new trial made upon the minutes.

*Henry Bacon* [*Joseph Merritt* with him on the brief], for the appellant.

*Arthur S. Tompkins*, for the respondent.

WILLARD BARTLETT, J.:

In this action the plaintiff has recovered $350 damages for injuries sustained by him in consequence of having been unlawfully ejected from one of the trains of the defendant, while traveling thereon as a passenger between New York and Spring Valley. Traveling with him, and under his charge at the time, was a lad whose identity and age are in dispute. No fare had been paid for this boy, and the plaintiff refused to pay any on the ground that he was under five years of age. The conductor, in demanding the fare from the plaintiff, insisted that the boy was eight or nine years of age. When the train arrived and stopped at a station called Carlstadt, the plaintiff having persisted in his refusal to pay any fare for the lad, the conductor, according to the plaintiff's version of the occurrence, called upon the baggageman or brakeman for assistance, and with him forcibly pushed the plaintiff through the aisle to the door of the car. When the railroad men had got the plaintiff out upon the platform, he took hold of the railing and said, "I won't go away, I rather pay," to which the conductor responded, "Never mind about the trouble of paying. You got to go out." The conductor and the man who was assisting him then forcibly put the plaintiff off the train.

This account of what happened was disputed by the conductor, who denied that when he got to the platform the plaintiff offered to pay the fare; but, of course, upon this issue the jury were at liberty to find that the plaintiff's version was correct. In his charge the learned trial judge instructed the jury as follows, in regard to the proof on this subject: " And then I will tell you this, at any time that this plaintiff had thrown up his hands and said : ' I will pay the fare,' the conductor had no further right, because the plaintiff had refused to pay the fare and had undertaken to pre-

vent the boy's being put off, to refuse to carry him, and to carry the boy, if he was ready to pay his fare. Because that was something that had passed and he could not, so long as plaintiff had abandoned all his attempt to keep the boy on the train and had ceased to insist that he could ride without paying his fare, so long as he had abandoned that, then the conductor had no right to refuse to carry him or to put the boy off. Any time that he had said : ' I will pay the fare and behave myself, let me alone,' it was the conductor's business to let him alone. He hadn't the right to say : ' You have behaved so badly I will put you off anyway.' No. The conductor was then bound to overlook what had gone by. That is all there is about it."

Counsel for the defendant excepted to that portion of the charge which has been quoted, and also asked the court to instruct the jury " that even though the plaintiff did offer to pay fare, that if that offer was made after the conductor had started to eject him and the boy, that the conductor was not bound to accept it, and there is no liability for his refusal to accept it." This request was refused, and the defendant again excepted.

The court had previously instructed the jury that the conductor had no right to put the plaintiff off the train because the boy did not pay his fare, but that " if the plaintiff undertook to prevent the conductor from removing the boy, then he put himself in the position of a disorderly passenger, whom a conductor always has a right to remove from a train, and if he, pursuing that right, only used so much (force) as was reasonably necessary, then the road is not liable." This instruction was evidently based upon the testimony of the conductor, which was to the effect that in the first instance he attempted to remove, not the plaintiff, but only the boy ; and that it was simply in consequence of the plaintiff's efforts to prevent him from putting the boy off the train that the witness exercised any force whatever directed toward the plaintiff himself. It does not distinctly appear just how the boy got out of the car.

In view of the evidence on both sides, I think that the instruction in reference to the effect of the plaintiff's offer to pay the fare at the time of the struggle upon the platform, and the refusal to give the instruction upon that subject requested by the counsel for the defendant, must be deemed erroneous.

In the case of *Pease* v. *D., L. & W. R. R. Co.* (101 N. Y. 367, 370) it was held that where a passenger, by refusing to pay a fare lawfully demanded of him, has obliged a conductor in the discharge of the duty which he owes the railroad company to resort to physical force for the purpose of ejecting him from the train, the passenger cannot thereafter assert a right to remain upon the train by offering to pay the required fare, even though the train is at the time stopping at a regular station. " When a passenger," says Ruger, Ch. J., in the case cited, " by an illegal refusal to pay fare has rendered it the duty of a conductor, in enforcing the reasonable rules and regulations of the company, to eject him from the cars, and the refusal and resistance of the passenger continues until after force has been required and applied to enforce such rule, we think he cannot make the continuance of the process of expulsion unlawful by an offer to pay fare during its progress."

As against the rule thus explicitly laid down in the *Pease* case, the learned counsel for the respondent refers to *O'Brien* v. *N. Y. Central & Hudson River R. R. Co.* (80 N. Y. 236), in which it was held that although a passenger may lawfully be removed from a train for refusing to pay his fare, he cannot properly be ejected at a regular stopping place when the passenger, before being put off, or others in his behalf, offer to pay the full fare. That case, however, is distinguishable from the case at bar in the fact that no physical force had been exercised by the trainmen, nor any effort whatever made to eject the plaintiff from the car prior to the time when the lawful fare was tendered by him or in his behalf. And this distinction is pointed out and emphasized by Ruger, Ch. J., in his opinion in the *Pease* case, from which I have already quoted. " The case of O'Brien," he says, " holds that when an oral controversy as to the payment of fares arises at or before arrival at a regular station, and while at such station, and before force has been applied to effect the expulsion, the passenger offers unqualifiedly to pay his fare, and tenders the money therefor, that his subsequent expulsion under such circumstances would be unlawful, and we think decides nothing farther than this."

I have taken the trouble to examine the record which was used in the Court of Appeals in the *O'Brien* case (Court of Appeals cases in the Brooklyn Law Library, vol. 356), and the testi-

mony contained in the appeal book clearly shows that the controversy in respect to the payment of the fare, up to the time it was actually tendered, was wholly oral and involved none of the elements of an affray such as occurred in the *Pease* case and the case at bar.

For the error of the court below, in refusing to follow the rule laid down in the *Pease* case, we are obliged, I think, to reverse this judgment.

All concurred.

Judgment and order reversed and new trial granted, costs to abide the event.