## MISSOURI, K. & T. RY. CO. VS SMITH.

### Opinion delivered October 27, 1905.

### (89 S. W. Rep. 668).

1. *Appeal—Motion to Dismiss.*

   Motion filed to dismiss appeal must be specific, and not general, in order to be considered.

2. *Same.*

   A motion for a new trial which specifies that the court erred in the admission of evidence over defendant's objection; that the court erred in not admitting evidence offered by defendants; that the court erred in giving certain instructions to the jury at the request of the plaintiff and that the court erred in not instructing the jury as requested by defendant, were too general and will not be considered on appeal.

3. *Carriers—Ejectment of Passengers—Tender of Fare.*

   Plaintiff who had surrendered his transportation to the conductor, voluntarily left the train at an intermediate station, and had missed that train and had boarded the next train expecting the conductor would carry him to his destination. The conductor took up his hat check and demanded his fare and after explanation the conductor refusing to carry him proceeded to eject the plaintiff when a friend of the plaintiff's tendered to the conductor his fare, which the conductor refused to accept and ejected plaintiff. *Held;* That the conductor should have accepted the fare as tendered and that his acts in refusing and ejecting plaintiff were wrongful.

4. *Same—Damages.*

> In an action for damages against a railroad for the wrongful ejection
> of a passenger plaintiff is entitled to recover for loss of time, humilia-
> tion, inconvenience in reaching his destination and suffering in mind
> and body.

5. *Same—Verdict Excessive.*

> It is a well established rule that a verdict will not be disturbed on the
> ground of its being excessive, unless it is so large as to shock the
> sense of justice. Considering that plaintiff, a cripple, compelled
> to walk with a crutch, was wrongfully ejected from a train at about
> midnight and compelled to walk six or seven miles to his destination;
> *Held;* That eight hundred dollars was not excessive.

Appeal from the United States Court for the Northern
District of the Indian Territory; before Justice Joseph A. Gill,
Feb. 16, 1904.

Action by W. M. Smith against the Missouri, Kansas
& Texas Railway Company. From a judgment in favor of
plaintiff, defendant appeals. Affirmed.

This is an action for damages brought by the appellee
by reason of being ejected from a passenger train of the ap-
pellant. The complaint alleges: "That on the 22d day of
August, 1903, the plaintiff had agreed to go to work for the
said defendant company as a cook for a gang of railroad men,
who were laying steel upon the road of said defendant company,
and was furnished transportation from said defendant from
Atoka, I. T., to Adair, I. T., for the purpose of taking up his
employment as a cook for said defendant company. That
on said day the plaintiff took passage on the train of said de-
fendant company at Atoka, and his said pass was taken up

by the conductor of said defendant company at Atoka, and a check punched by said conductor of said defendant company, showing his destination to be Adair, I. T., and placed in the hat band of the plaintiff by said conductor of said defendant company.   That when the train of said defendant company upon which the plaintiff was traveling reached the station of Eufaula, I. T., the plaintiff got off of said train to get some jackets, and, the train pulling out sooner than the plaintiff anticipated, the plaintiff got left at said station.   That the plaintiff made known these facts to the agent of said defendant company at Eufaula, and that said agent told the plaintiff to get on the next train of said defendant company going north and passing through Adair, I. T., and to explain these facts to the conductor of said defendant company in charge of said train and that he was satisfied the said conductor would carry the plaintiff to his destination under the circumstances, the plaintiff having the check punched on his hat placed there by the conductor of the train on which he had first taken passage.   That the plaintiff boarded the next train of said defendant company going north and through Adair, I. T., at Eufaula, and the conductor in charge of said train and in the employ of said defendant company demanded of him his ticket, whereupon the plaintiff explained the circumstances herein related to said conductor in charge of the train of the said defendant company, and said conductor took said ticket out of the hat of plaintiff and demanded his fare, telling him that he could not and would not carry him, unless he had a ticket or paid his fare, and that he had nothing to do with the fact that the plaintiff had gotten left as he stated. That the plaintiff told the conductor that he had no money, and the conductor in charge of the train of said defendant company told him that he would have to get off and reached up and pulled the bell cord to stop the train.   That before said train had come to a stop George Benge, of Tahlequah, I. T.,

a passenger on board the train, who knew the plaintiff, came up to the conductor and told him that he knew the plaintiff and that he was all right, and asked him what his fare was from Eufaula to Adair, and upon being told the amount of the fare tendered to the conductor in the employ of said defendant company the full amount of said fare in good and lawful money of the United States of America, but said conductor refused to accept said fare, stating that he had already pulled the bell cord to put the plaintiff off, and that 'B— G—, he had to get off,' meaning the plaintiff. That the train thereupon came to a standstill between the stations of Chouteau and Pryor Creek, I. T., about six or seven miles north of Choteau and nearer to Choteau than any other station on the line of said defendant company's railroad. That the plaintiff was wrongfully and unlawfully and harshly ejected from the train of said defendant company by said conductor in charge thereof. * *" The answer is a specific denial of each of the allegations of the complaint. Trial was had, resulting in a verdict for the appellee for $800.

Clifford L. Jackson, for appellant.

Wilson & Davis and W. P. Thompson, for appellee.

CLAYTON, J. (after stating the facts). A motion to dismiss the appeal herein, on the ground that the motion for new trial filed by appellant in the court below fails to set out in detail the errors relied on, has been filed and submitted with the cause. The motion for new trial is as follows: "First. That the court erred in the admission of evidence over the objection of the defendant, and to which action of the court the defendant duly excepted. Second. That the court erred in refusing to admit evidence offered by the defendant, and to which action of the court the defendant duly excepted.

Third.   That the court erred in the several instructions given to the jury at the request of the plaintiff, to which action of the court the defendant duly excepted.   Fourth.   That the court erred in refusing to instruct the jury to return a verdict for the defendant, to which action of the court the defendant duly excepted.   Fifth.   That the court erred in refusing to instruct the jury as requested by the defendant, and to which action of the court the defendant duly excepted. Sixth.   That the verdict is excessive in amount.   Seventh. That the verdict is not sustained by the evidence.   Eighth. That the verdict is contrary to law."   While the first, second, third, and fifth grounds of the motion for new trial are too general to be considered, the others, notably the fourth, are certainly specific.   The motion to dismiss the appeal is therefore overruled.

The evidence as to where the plaintiff boarded the train of defendant is conflicting.   The plaintiff himself testified substantially as alleged in the complaint.   The conductor of the defendant testified that he first noticed the plaintiff after his train had left the station of Choteau, which is some 70 miles north of Eufaula, where plaintiff claimed to have boarded the train.   One of the witnesses for defendant testified positively that he saw the plaintiff board the train at Choteau. There is, however, no conflict in the testimony as to what occurred at the time the conductor demanded the plaintiff's ticket or fare.

Assuming that the contention of plaintiff is true, that he had been furnished with transportation from Atoka to Adair on a preceding train, and that of his own volition he had alighted at an intermediate station, Eufaula, and had missed that train, and had boarded the next train, expecting that the conductor would carry him to his destination on the hat check that had

been given him by the first conductor, did the court err in refusing to instruct the jury to return a verdict for the defendant? The decisions of the highest courts of the various states are somewhat conflicting as to the true rule to be applied in cases of this kind. The weight of authority, however, establishes the principle that where a passenger has been unable to procure, or, after procuring, has been deprived of, his ticket, through the fault or negligence of the carrier, he has the right at any time before actual eviction to tender and the company must accept his fare; but, if one enter a railway car without the means of transportation, with the intention of avoiding the payment of fare, and willfully refuse, on proper demand, to do so, he may then be ejected, and after steps have been taken looking towards his removal no tender of fare will be sufficient to render the company liable for his eviction. Where, however, a passenger in good faith tenders transportation which is void, and there has been no negligence on the part of the carrier, and there is no willful or captious refusal on the part of the passenger to comply with the lawful demand of the conductor for the payment of fare, the passenger may at any time before actual eviction, or some one for him, tender, and the company must accept, the fare. "The question has frequently arisen in recent cases whether, after a passenger has refused to pay the fare demanded or to produce his ticket, and the conductor has begun to eject him, or has completely ejected him, the passenger may then tender the fare or ticket required and be entitled to continue his journey upon that train. Upon this question the cases are not in harmony, but the prevailing rule, and the one supported by the better reasons, is that, even though he may once have refused to pay his fare or show his ticket, he may at any time before the process of eviction is begun comply with the demand and continue his journey on that train; but, where he so refuses and persists in his refusal, after being accorded reasonable time and opportunity to comply,

until the conductor has begun the process of ejection, either by stopping the train or applying force to the passenger when necessary, the passenger thereupon forfeits his rights as a passenger, and his ejection may be completed, even though he may thereafter tender the performance demanded." Hutchinson on Carriers (2d Ed.) § 591a. "According to the weight of authority and the better reason, a passenger who has persistently refused to pay his fare or produce a ticket cannot gain a right to be carried and make the expulsion unlawful by a tender of the fare after the conductor has begun to expel him, but it has been held that, if he has no money, another may pay his fare for him before he is expelled." Elliott on Railroads, vol. 4, § 1637.

According to the contention of the plaintiff, he had been told by the agent of the company at Eufaula that the conductor would probably carry him on the hat check which had been given him by the conductor of the preceding train. He presented this hat check to the conductor, and informed him of the facts, and was told that this would not entitle him to ride—that he would have to pay his fare. The plaintiff informed the conductor that he had no money, and was told that he would have to get off. The conductor then pulled the bell cord to stop the train, and started with the plaintiff, who made no resistance, toward the door of the car. Before the train had stopped a friend of plaintiff offered the conductor plaintiff's fare, but the conductor refused to accept it, and proceeded with the ejection of plaintiff. There was nothing willful or captious in the conduct of the plaintiff. He tendered what he, as claimed, in good faith, believed to be transportation which would be accepted by the conductor. The conductor refused to accept it, and the plaintiff peaceably and quietly started to comply with the demand of the conductor to leave the train. There was no resistance on his part, and nothing

which justified the conductor in refusing to accept the tender of the fare for the purpose of making an example of the plaintiff, and in order to preserve peace and quiet on his trains. The case of L. & N. R. Co. vs Garrett, 8 Lea (Tenn.) 438, 41 Am. Rep. 640, is very like the case at bar. In passing upon that case, the Supreme Court of Tennessee say: "It is urged, however, and cases are cited tending to support the position, that immediately on failure to comply with the demand of the conductor the contract was broken or was forfeited, and the right of the carrier was complete to eject the passenger, regardless of a subsequent offer before actual ejection to pay either by himself or another for him. To this proposition we cannot assent, at any rate in a case like the present. Here was no captious objection or refusal to pay or comply with a reasonable regulation of the carrier, such as the cases of refusal to give up ticket on receiving a check or to exhibit ticket or the like as in the cases referred to. On the contrary, it was only an inability to meet the demand for the fare arising out of innocent mistake or ignorance." To the same effect are T. & P. R. Co. vs Bond, 62 Tex. 442, 50 Am. Rep. 532; L. N. & G. S. R. Co. vs Harris, 42 Am. Rep. 668; A., T. & S. F. R. Co. vs Dwelle (Kan. Sup.) 24 Pac. 504; Pease vs D., L. & W. R. Co. (N. Y.) 5 N. E. 37, 54 Am. Rep. 699; Thompson on Carriers, § 640. We find no error in the action of the court in refusing to instruct the jury to return a verdict for the defendant.

Complaint is made as to the correctness of the court's charge as follows: "The court instructs the jury that if they find from the evidence that before the train was stopped some other person or persons offered to pay the fare of the plaintiff, due to defendant to the conductor in charge of the train of the defendant company, that said fare so offered cannot be refused, no matter who makes it, and you should find for the plaintiff and against the defendant." If there had been any proof

as to a willful or violent refusal to pay fare, this instruction would not state the law correctly; for it is the law that a passenger cannot stubbornly refuse to pay and put the carrier to the trouble and inconvenience of stopping its trains, and then attempt to reinstate himself by a tender of the fare. But the defendant's testimony clearly establishes the fact that, when the plaintiff was told that the hat check which he offered could not be honored, he quietly submitted to the request of the conductor to leave the train, and the conductor gave as his reason for refusing the fare tendered by the other passenger that the plaintiff was a bum and he intended to make an example of him. In the light of this testimony, the refusal to accept the fare, tendered admittedly before the train had stopped, was wrongful, and the failure of the court to instruct the jury that if the plaintiff willfully and captiously refused to pay, etc., was not error, as there was no evidence on which such an instruction could have been based.

Exception is taken to the charge of the court as to the measure of damages. We think the issue was properly submitted. The jury were instructed to allow nothing but compensatory damages, and were told that they should compensate him for loss of time, humiliation, and inconvenience in reaching his destination, and suffering in mind and body. These are proper elements of damage. St. L. & S. F. R. Co. vs Brown, 62 Ark. 254, 35 S. W. 225.

It is urged that the verdict is excessive. The verdict was for $800. It is the well-established rule that a verdict will not be disturbed on this ground, unless it is so large as to shock the sense of justice. Considering that the plaintiff, a cripple, compelled to walk with a crutch, was unlawfully ejected from a train at about midnight, and compelled to walk six or seven miles to his destination, and considering that he was

entitled to be paid for his humiliation in being ejected from the train, we do not see anything grossly excessive in the verdict.

Finding no errors, the judgment of the court below is affirmed.

TOWNSEND, J., concurs.    RAYMOND, C. J., not participating.