GA. SOUTHERN & FLA. RAILROAD CO. v. ASMORE.

A passenger on a railway train who refuses to accede to a wrongful demand for fare is entitled to be carried on acceding to the demand, though the train may have been stopped with a view to his expulsion; but if the demand upon him is rightful he cannot avoid expulsion by tendering the fare whilst the train is being stopped or after the stoppage. Where the failure of the passenger to have a ticket is due to the non-attendance of the agent at the ticket-office, or to other fault or default of the company, the passenger is entitled to be carried at the ticket rate of fare; but where his failure is attributable to any other cause, he has no right to be carried without paying the higher lawful rate exacted by the rules of the company.
February 15, 1892.

Railroads. Passengers. Before Judge MILLER. Houston superior court. April term, 1892.

Reported in the decision.

GUSTIN, GUERRY & HALL, for plaintiff in error.
A. G. GILES, contra.

BLECKLEY, Chief Justice.

The testimony was in some conflict. It raised the question of fact whether the failure of the passenger to have a ticket was due to the fault or default of the company, or to the omission of proper diligence by the plaintiff to supply himself with a ticket. Another question of fact on which the testimony differed was whether the passenger offered to pay at the conductor's rate before or not until after the train was stopped or being stopped for his expulsion. That he made the offer before he left the car, there is no dispute. The court charged the jury that if he started to leave the train, and before doing so, honestly changed his mind and in good faith determined to remain and pay the amount charged, he had a right to do so; and if he tendered that amount before he left the car, the conductor was bound to receive it, and ejection after such tender would be illegal and wrongful.

Was this instruction correct? Tested by the letter of the decision in *South Carolina Railroad* v. *Nix*, 68 *Ga.* 572, it was correct. Permission was granted in the argument here to review that case in respect to this question, and we have reviewed it. Our conclusion is, that it is not sustainable either on principle or by sound authority, and we feel constrained to overrule it in so far as it lays down in universal and unqualified terms the proposition, or its equivalent, that a passenger by making a tender at any time before his ejection may acquire the right to remain on board and be carried. Whenever a passenger refuses to accede to a just and lawful demand made upon him by the conductor for the payment of his fare, after being allowed reasonable time and opportunity to comply, he renounces his right to the position and the privileges of a passenger, and subjects himself to expulsion from the train. If he changes his mind and tenders the fare before anything is done towards bringing the train to a stop in order to eject him, his refusal will be retracted in time and his right to remain and be carried will stand unaffected. If he higgles and hesitates until he becomes a proper subject for ejection, and until steps have been taken to that end, he is too late. Any rule which would allow one passenger to play fast and loose with the conductor would allow all the passengers to do so, and a train might thus be kept halting and alternating between running at ordinary speed and stopping throughout the whole of its journey, and to this embarrassment not only one train, but every train run for the carriage of passengers, would be exposed. See the observations of Denio, J., in *Hibbard* v. *Railway Co.*, 15 N. Y. 455; Hutch. on Car. (2 ed.) §589. The code, section 2082, declares that "Carriers of passengers may refuse to admit, or may eject from their conveyances, all persons refusing to comply with reasonable regulations, or guilty of improper conduct." It is certainly im-

proper conduct for a passenger to delay the payment of
his fare beyond the time when he ought to pay it, and a
regulation that he shall pay on demand of the conductor
is reasonable and so necessary for the orderly conduct
and transaction of business that it may fairly be pre-
sumed to be a regulation which all railway companies
carrying passengers adopt and expect to enforce. This
method of dealing with passengers who travel by rail-
road is so universal as to be a matter of general public
observation and experience, and we apprehend that it
would be a very rare instance in which a passenger
would be surprised to find it in use. In the present case,
the passenger when called upon did not object to paying
promptly what he admitted to be due. In fact, he put
into the hands of the conductor money more than suffi-
cient for the payment of his fare at the higher rate.
Touching what immediately followed the testimony is
conflicting, but it is clear that a discussion arose as to
whether payment should be made at the ticket rate or
at the train rate, in consequence of which none of the
money was retained but all of it was returned. The
plaintiff contended for the ticket rate, upon the ground
that he tried to get a ticket and that the agent was not
at his place; the conductor insisted upon the higher rate,
which was the usual and legal one exacted of passengers
who had not procured tickets. According to sound legal
principle, the right of the plaintiff to remain upon the
train and be carried on payment or tender of the ticket
rate should depend alone upon the fact whether the non-
attendance of the ticket-agent at the office, or any other
fault or default of the company, was the true reason why
the plaintiff was not supplied with a ticket. If his fail-
ure to have it was due to his own neglect, or to any cause
not chargeable to the company, its agents or employees,
the tender of the ticket rate had no relevancy whatever
to the right of the plaintiff to be carried or to shun ejec-

tion from the cars. He might as well have tendered nothing as not enough. On the other hand, if it was the company's omission or fault that prevented the plaintiff from having a ticket, the conductor had no right to demand the payment of fare at a higher than the ticket rate, no right to reject that rate when tendered, and after its tender he could not lawfully expel the passenger for not complying with his unlawful demand of payment at a higher rate. This test of the respective rights of the passenger and the carrier goes to the foundation, and rests upon the actual state of facts, and not upon mere belief or good faith either of the passenger or of the conductor. It requires them to know their respective rights and to act accordingly. A passenger always knows why he fails to obtain a ticket; a conductor represents the company, and if the company has failed in any of its duties to afford passengers opportunity to obtain tickets, he should be so informed. If the company will not allow him to take the word of the passenger, it must adopt some other means of informing him, as, for instance, requiring him to ascertain at each station before leaving it whether the ticket-office has been properly kept open and attended for the sale of tickets, or not. What the company by any of its proper agents or employees knows on that subject, the conductor, as representing the company on the train, may be presumed to know, and this presumption, as a general rule, should be treated as conclusive. The respective legal rights of the parties being as we have just announced, can those rights be changed by either without the consent of the other? It is clear to us that they cannot. Either may waive his own rights, but neither can compel any waiver by the other. If the passenger has the necessary state of facts to back him, nothing which the conductor can do will justify his expulsion. So if the conductor, on the other hand, has at his back the necessary state of facts, he may en-

force the rule of expulsion over any tender whatever which the passenger may make after steps have been rightfully taken to stop the train in consequence of the refusal to pay. Of course, this applies only to instances occurring between stations, and where the sole reason for stopping the train is to effect expulsion. We desire to restrict our ruling to what is necessary for a decision of the case before us. The sum of the matter is, that a passenger cannot force a railroad company to reject him as a patron, and then force it, by making a tender which he ought to have made before, to cancel the rejection and perform service the same as if there had been no failure to agree originally.        *Judgment reversed.*