### SOUTHERN RAILWAY COMPANY *v.* DeSAUSSURE.

1. When one has purchased from a railway company a commutation ticket at a price below the regular fare charged, by which the purchaser is entitled to a given number of trips between places named in such ticket, on conditions that no rebate on account of the non-use of the ticket from any cause will be allowed, and that the ticket shall be presented to the conductor on each trip, the presentation of the ticket is a condition precedent to the right of the purchaser to be transported on it ; and in case of its loss, so that it can not be presented, there is no obligation on the part of the company to transport the purchaser except upon the payment of the regular fare ; and such purchaser is not entitled, because of the terms of the contract, either to have refunded to him the amount so paid for transportation, or to recover damages against

the company for a failure to transport him without paying fare, during the time limit of the lost ticket, the number of trips called for thereby, or for a refusal to issue him a duplicate ticket.

2. The trial judge erred in remanding the case to the justice's court, and in not rendering a final judgment therein in favor of the plaintiff in certiorari.

Submitted May 1, — Decided July 24, 1902.

Case.    Before Judge Brinson.    Richmond superior court.    October 23, 1901.

*Joseph B. & Bryan Cumming* and *G. M. Beasley,* for plaintiff in error.    *F. W. Capers,* contra.

LITTLE, J.    John B. DeSaussure purchased from the Southern Railway Company a commutation ticket in the following form: " Southern Railway Company.  Fifty-four trips commutation ticket. When properly stamped, this ticket will entitle J. B. DeSaussure to fifty-four continuous trips in either direction between Augusta and Aiken, if presented on or before 14th July, 1901, inclusive, 30 days limit.    Subject to conditions printed on back of ticket which must be signed by purchaser before using.  [Signed] W. A. Smith, Gen. Passenger Agent."    This ticket was properly stamped, and on the back thereof was printed what was termed a contract, which read as follows: " In consideration of the reduced rate at which this ticket is sold, I agree that its use shall be subject to the following conditions:"    Among those enumerated, only the 7th and 8th are important in this connection, which are as follows: " 7. That I have no claim for rebate on account of the non-use of this ticket from any cause.    8. It is to be presented to the conductor each trip, [who] will cancel one of the marginal numbers, and is to be surrendered on the last trip taken, during the period for which it is issued."    DeSaussure lost this ticket, and was unable to find it.    He communicated these facts to the railroad company, and requested its agent to issue him a duplicate, or in some way to give him a right of passage between Augusta and Aiken in accordance with the terms of its contract with him.    The company refused to do so, and also refused to allow him to deposit with it the value of the ticket as an indemnity, and pass him over the road the number of consecutive trips represented by the ticket at the time of its loss, unless he would produce the ticket.    He then instituted an action in a justice's court, alleging that the railway company had caused a breach of the contract which they had entered

into; and sought a recovery of damages in consequence of such breach, in the sum of $6.50. He also averred that the company had caused him unnecessary trouble in compelling him to institute the suit to recover what he should have had without suit, and unnecessary expense in being compelled to employ counsel to bring the action, and claimed that the damage in this regard was $25. Defendant denied liability, and the case was tried before a jury in the justice's court, which returned a verdict for the plaintiff "for full amount" sued for. The railway company then applied for a writ of certiorari, which was ordered to issue; the petition for which writ recited, as the evidence had on the trial in the justice's court, substantially the following:

Plaintiff paid $7.50 for the ticket, a correct copy of which was attached to the petition. He had ridden several times on it between Augusta and Aiken, and, after having done so, had lost it. There were 11 or 13 "punches" unused at the time of the loss. He had searched for the ticket, and was unable to find it. He then notified the company's agent of the loss, and desired to have a duplicate issued. This was declined. He then applied to the passenger agent of the road for such duplicate, without success. He then asked for some papers which would entitle him to continue his trips, but was refused. He then offered to deposit with the company the amount of the ticket and, if anybody used it, to forfeit the amount so deposited. This proposition was also declined. He then employed an attorney, whose fee was $25, to institute an action against the company to recover his damages. The "punches" unused on the ticket amounted to $6.50. He did not sign the contract on the ticket, and was not asked to do so. He did not read the conditions on the ticket when he purchased it, and not until he had taken the first ride. He then read them and continued to ride on it. He subsequently purchased a second ticket which he did sign. The price which was paid for the ticket was considerably less than the straight fare. The conductor of the defendant testified, that to the best of his knowledge the ticket in question was signed; that he allowed the plaintiff to ride three times after he had lost his ticket; that commutation tickets were sold at largely reduced rates. The lost ticket had never been presented. The company put up a bulletin to look out for the ticket, etc. The answer of the magistrate was, in effect, that the evidence set out in

the petition was substantially correct. The errors assigned in the petition for certiorari were, that the verdict rendered in the justice's court was contrary to the evidence, and contrary to law. At the hearing the judge of the superior court passed an order that the case be sent back to the justice's court for a rehearing. To this judgment the railway company excepted, and specifically assigned as error, that the judgment was erroneous, because, under the undisputed evidence, any finding against the company was erroneous, and because the only question involved was one of law, and therefore the judge should have made a final disposition of the case in favor of the petitioner in certiorari. It may be well to remark, at the outset, that each of the parties is to be governed by the terms of the contract into which they entered, and that it is the duty of the courts to enforce the terms of contracts which parties have made, and neither to enlarge nor restrict such terms beyond or below the intention of the parties as therein expressed. The plaintiff testified that he did not sign the contract. If he did not, then he was not entitled to be transported on the ticket at all; for on the face of his ticket, which was confessedly sold at a greatly reduced rate, is the statement that the transportation of the purchaser is subject to the conditions printed on its back, which must be signed before using the same. However, this is not material in the consideration of the questions involved, for the reason that the conductor of the defendant's train testified that it was signed; and even if DeSaussure had not signed it, he used it after he had knowledge of its conditions, and he was, of course, thereafter bound by such conditions.

1. The first question which arises in the consideration of this case is, whether the plaintiff in the court below had the legal right, after having lost his ticket, to have the company issue him a duplicate ticket or in some way give him the right of continuous passage between Augusta and Aiken for the trips remaining unpunched thereon, under the terms of the contract which the company had made with him at the time he purchased his ticket. If he had this right, it was denied to him by the railway company, and he was entitled to recover the damages which he sustained by reason of that denial. If he had no such right, then he was entitled to no damages. This question is to be determined by the contract between the parties. By reference thereto it will be seen that it was stipulated that the plaintiff should have no claim for rebate

on account of the non-use of the ticket from *any cause.* The legal effect of this condition in a commutation ticket was passed on by the Interstate Commerce Commission, in the case Sidman *v.* R. & D. R. Co., 3 Int. Com. Com. Rep. 512, where passage on a commutation ticket was subject to a condition in the exact terms of the one just referred to; that is, that the purchaser should have no claim for rebate on account of non-use of the ticket from any cause. It was there ruled by the commission, that, under that condition, it was not an unlawful discrimination to refuse to refund to the purchaser, who held such ticket but had forgotten to take it on a certain trip, the amount which he had paid as his fare. It is, however, claimed by counsel for defendant in error, that the performance of an impossible condition is not required; and that inasmuch as the ticket had been permanently lost and could not be presented, the condition requiring its presentation on each trip was impossible of performance, and therefore he would be entitled to be refunded by the company the value of so much of the ticket as remained unused, at the time of its loss. This contention is not a sound one. It has been repeatedly ruled that regulations such as are expressed in these conditions are not unreasonable. In the case of L. N. & G. S. R. Co. *v.* Fleming, 14 Lea, 128, it was ruled, that a regulation which provided that passengers should, on demand, exhibit their tickets on entering the train and should afterwards, on like demand, surrender the same or pay fare under penalty, in case of refusal, of removal from the cars, was a reasonable one; and that there is no distinction, so far as the relative rights of the parties are concerned, whether the ticket be lost or mislaid before or after going on the train. But whether such stipulation would be reasonable or not as one of the regulations of the company is not the question here, because the contract between the parties expressly provides the stipulation referred to as a part of the contract, and as a part of the contract it was binding on each of the parties. In his Commentaries on the Law of Negligence, vol. 3, § 2625, Judge Thompson says: "Passengers riding upon commutation tickets are bound strictly by the terms of the contract embodied in such tickets." We are therefore clear in our opinion that, under the conditions attached to the issuance of the lost ticket, the plaintiff was not entitled to have refunded to him any sum for the unused parts of the ticket, nor any sum which he may have paid out for trans-

portation during the time covered by the ticket. The stipulation that the ticket was to be presented to the conductor on each trip was equally binding as a part of the contract; and if the plaintiff was not entitled to be transported until, as a condition precedent, he had exhibited his ticket, then whether such failure was attributable to the fact that the ticket had been lost, or to other cause, is in no sense material; for by his own agreement he was only excused from paying his fare when he exhibited a ticket showing his right to be transported without such payment. In the case of Ripley *v.* N. J. R. & T. Co., 31 N. J. L. 388, it appeared that plaintiff had purchased a commutation ticket from defendant, to be good from January 1, 1865, to January 1, 1866, at a reduced price. In a receipt given for the money this note appeared: "The commutation ticket is to be shown to the conductors and ferry masters each trip, whenever required. . . No repayment in consequence of any inability to use the privilege. No duplicate ticket will be issued." This ticket was stolen from the plaintiff, and because he could not show his ticket the railroad company refused him the privilege of a free pass; and he thereupon brought his suit for damages. In discussing the question presented Vredenburg, J., said: " This is not a question of the reasonableness of the rules of the company, or whether plaintiff complied with such rules, . . but simply whether it was lawful for the parties so to contract, and whether they did so contract. It is argued that, the ticket being lost, the plaintiff should be permitted to prove its contents, as in the case of other lost instruments. But nobody objects to that; that is not the difficulty. The difficulty is, that upon proving the contract it appears that, by the terms of the instrument, the plaintiff has lost the privilege of a free pass. The right to a free pass depended, by the terms of his contract, upon his showing the conductors his ticket; and this he could not do, for he had lost it. It has been argued, that the plaintiff had paid his fare, and that he ought not to lose his right because he has lost the evidence of the payment. If there had been no special contract, or if the plaintiff had paid all the fare that the law allowed the defendants to charge, that would have been another question. But he paid here a special fare under a special contract. The defendants agreed that the plaintiff might travel for a fare which is not alleged to be the full fare the law allowed, and the defendants had a right to impose such conditions as they

saw fit; and they saw fit to prescribe, as a condition, that the plaintiff should show his ticket, and this he agreed to. He thus became his own insurer that he would not lose his ticket. If he did not like that contract, he should not have entered into it. But having entered into it, he is bound by it, as much so as the company are to carry him if he does show his ticket." Not only the ruling but also the reasoning in this case seems to be conclusive against the right of the plaintiff to recover damages from the railway company for refusing to issue him another ticket, or in refusing to pass him over its road without the presentation of it.

The company never agreed to substitute another ticket if the one he purchased was lost. While the plaintiff in this case did contract and pay for a given number of trips, which was evidenced by his ticket, his right to make those trips was by agreement based on the condition that the ticket which was sold should be presented each trip. It may be, if the plaintiff had contracted for and paid in advance the usual fare for each of the trips, that his right to be transported would have been absolute. But when it appears, as in this case, that he purchased the ticket for a given number of trips for a sum largely below the regular fare, the better doctrine is that he is not entitled to be transported unless the conditions of the contract which form a part of such ticket are fully complied with. In the case of Bennett v. Railroad Co., in the court of common pleas of Philadelphia, 7 Phila. Rep. 11, it was ruled that "a railroad company has the right to require commuters to show their tickets, and, in default, to exact the fare without liability to repay it." To the same effect see the citation from Thompson on Negligence, supra. Inasmuch, then, as by the contract of the parties the plaintiff was not entitled to be transported over defendant's railroad without the payment of the regular fare, unless he exhibited his ticket, he would not be entitled to have from the defendant any amount paid for such transportation when he failed, for any cause, to present his ticket. Nor, after its loss, would he be entitled to be transported free without the production of the ticket. Nor could he lawfully demand of the company another ticket, or papers entitling him to any number of trips under the terms of his original contract, because that very contract provided that he was not so entitled unless his ticket was presented. Its loss was his misfortune. His right to transportation depended on the produc-

tion of his ticket. This right was only a right on conditions. These conditions the company could lawfully impose, because the right was given for a largely reduced compensation. As the company was not bound to issue him a duplicate, and as he was not entitled to be transported free without the presentation of his ticket, although he had lost it, it follows that he was not entitled to recover any damages for the failure of the company in any of the respects as to which he claims to have been damaged. Not being entitled to recover any damages against the company for any default shown in the pleadings, of course plaintiff was not entitled to have a verdict or judgment for the attorney's fees which he claimed. Therefore the verdict in the justice's court was contrary to law; and as the determination of the case rested solely upon a question of law, the judge of the superior court should have finally disposed of the case, on certiorari, by a judgment in favor of the plaintiff in certiorari.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*