## HARP, by next friend, *v.* SOUTHERN RAILWAY CO.

1. As many tickets entitle the bearer to transportation, they might be used by the finder, with the result that two could ride for one fare, if the carrier were required to carry a passenger who has lost the ticket purchased by him.

2. A passenger who loses his ticket has no right to be carried upon making or offering to make proof that the one paid for has been lost. The loss falls on him, and not on the carrier.

3. It affirmatively appears from the allegations of the petition that the plaintiff neither had nor offered to pay the fare. On his failure to produce a ticket he was lawfully evicted.

4. Where a petition has been dismissed on general demurrer, and the judgment thereon has been affirmed, there is nothing to amend by; nor do the facts here call for the exercise of any discretionary power by this court to grant an order allowing the plaintiff to amend before the entry of the remittitur in the trial court.

Argued March 14, — Decided March 31, 1904.

Action for damages. Before Judge Roan. Clayton superior court. April 18, 1903.

Harp, a minor of sixteen, sued the Southern Railway Company for a wrongful ejectment. He alleges that he bought a ticket entitling him to ride from Atlanta to Topeka Junction, in Upson

county, on the line of defendant's road, passing through Clayton; that while on the rear platform of the train an employee of the company asked him how far he was going, whereupon the plaintiff showed him the ticket; that the employee looked at it and handed it back to the plaintiff, when the ticket was blown out of plaintiff's hands; that shortly thereafter the conductor asked the plaintiff for his ticket, and he, in the presence of the employee, explained the circumstances of its loss, the employee corroborating his statement; that notwithstanding this fact the conductor ordered the plaintiff to leave the train, and put his hand on him for the purpose of removing plaintiff from the moving car, and to prevent being violently ejected the plaintiff leaped from the car, running at from ten to fifteen miles an hour, about half a mile before reaching Riverdale; that when plaintiff handed the ticket to the employee he thought the latter was the conductor; that he was compelled to walk to Atlanta, fourteen or fifteen miles; that there were few passengers for Topeka, and that it would have been easy on arriving at Riverdale for the conductor to have telegraphed to Atlanta and verified petitioner's statement that he had purchased the ticket to the station named; that petitioner was young and unaccustomed to travel, and did not have sufficient money to pay his fare from Atlanta to Topeka at the time a ticket was demanded; and that the manner of his ejection was aggravated by the threats and commands of the conductor.    The defendant demurred generally and specially, on the grounds, that there was no cause of action set out; that the petition was duplicitous; that it was uncertain whether the action was for an illegal eviction or for an abuse of duty in a lawful eviction.    After argument the court passed an order reciting that "the plaintiff admitted that the suit was only for the wrongful expulsion, and that the company had a regulation authorizing conductors to eject passengers who neither paid fare nor produced a ticket," and directing that the general demurrer to the original and amended petition be sustained and the case dismissed.    In plaintiff's brief he requests that, if the judgment be affirmed, leave be granted him to amend by alleging that the conductor failed to demand the cash fare.

*M. D. Womble* and *W. R. Hammond*, for plaintiff.

*Dorsey, Brewster & Howell* and *J. B. Hutcheson* for defendant.

LAMAR, J. This suit was for wrongful expulsion, and not for damages inflicted upon the plaintiff as a result of his being compelled to alight from a moving train. The fact that one actually purchased a ticket, and that this was known to the agent who sold it, or to the gatekeeper who examined it, or to employees on the train who saw it, would not relieve the passenger of the obligation to surrender it to the conductor. Tickets vary in their terms. Some are good only on certain trains; others only on particular dates ; others require validation. The mere fact that the plaintiff has a ticket does not, therefore, necessarily establish his right to be transported on a given train. These matters must be passed on by the conductor, and not by other employees who are not charged with this duty by the company. When the conductor makes his demand, he is entitled to have the ticket surrendered. He can not be required to hear evidence or investigate the bona fides of the passenger's excuse for its non-delivery, nor to wait until he arrives at the next station and, by telegraphic correspondence with the selling agent, undertake to verify the correctness of the plaintiff's statement, or determine the character and validity of the ticket sold. It is manifest that such course would necessarily give rise to delay, and seriously interfere with the operation of trains and the rights of the traveling public. Had the plaintiff's money blown out of his hand, it is evident that his misfortune would have to fall upon himself and not upon the company. Such loss would not have prevented his lawful eviction. The same result would follow where the ticket itself was lost; for it might have come into the hands of another, and the company might thereby have been compelled to carry two passengers for one fare. Besides, any rule allowing an excuse as a substitute for a ticket would give rise to so much uncertainty and so many possibilities of fraud that the courts' have uniformly held that the failure to pay the fare or produce the ticket warrants an eviction. In fact the plaintiff in error concedes the general rule to be that the passenger must produce his ticket, pay his fare, or suffer expulsion. He insists, however, that the special circumstances take this case out of the general rule. We fail to find any case warranting such a holding. Those cited by him, in 32 L. R. A. 193, and 56 L. R. A. 224, as well as Pullman P. C. Co. v. Reed, 75 Ill. 125, were on facts essentially different. See, on the general subject, L. & N. R.

Co. *v.* Fleming, 14 Lea, 128; Rogers *v.* Atlantic City R. Co., 34 Atl. 11; Fetter on Carriers, § 279. Compare *Southern Ry. Co.* v. *DeSaussure,* 116 *Ga.* 53; *G. S. & F. Ry. Co.* v. *Asmore,* 88 *Ga.* 529. Pleadings are to be strictly construed against the pleader. Here it affirmatively appears that plaintiff did not have funds with which to pay the cash fare. The general demurrer having been sustained, and the judgment affirmed here, there is nothing to amend by. It is not like the case where the demurrer was overruled in the lower court and the judgment reversed, nor like the case where the demurrer was sustained or should have been sustained only on a special ground not concluding the merits. *Central R.* v. *Patterson,* 87 *Ga.* 646; *Savannah Ry.* v. *Chaney,* 102 *Ga.* 817; *Brown* v. *Bowman,* 119 *Ga.* 153. There is nothing in the facts here to require the exercise of any discretionary power by this court to permit such amendment.

*Judgment affirmed. All the Justices concur.*