8224.  FOSKEY *v.* WRIGHTSVILLE & TENNILLE RAIL-
ROAD COMPANY.

1. The fact that one riding as a passenger on a railroad-train actually purchased from an agent of the carrier, before boarding the train, a ticket entitling him to transportation thereon, does not relieve him of the obligation to surrender the ticket to the conductor on demand; and if he is unable, through no fault of the carrier, to produce and deliver the ticket to the conductor after he has been given reasonable opportunity for so doing, he must, in order to entitle him to remain upon the train, offer to pay his fare.

2. Where a passenger claiming to have misplaced his ticket has been given a reasonable opportunity to find it and surrender it to the conductor, and fails to do so and makes no offer to pay the cash fare, he may lawfully be expelled from the train.

3. Where, for the sole purpose of expelling the passenger, on his failure either to produce and surrender his ticket or to offer a cash fare, steps are taken to stop the train, or it is brought to a full stop between stations and at a point at which it is not scheduled to stop, he can not, after expulsion, demand the right to re-enter the train.

4. Although it may be lawful to expel the passenger, special circumstances as to the manner or the time or place of the ejection may render it wrongful. In this case the evidence for the plaintiff clearly disclosed that his expulsion was lawful, and he sustained no injury on account of the manner, time, or place of his expulsion. The nonsuit was properly awarded.

DECIDED APRIL 4, 1917.

Action for damages; from Laurens superior court—Judge Kent. April 25, 1916.

On the evening of December 24, 1914, the plaintiff purchased from the defendant's agent a ticket from Dublin, Georgia, to Brewton, Georgia. About 5:30 o'clock, p. m., he boarded a passenger-train of the defendant at Dublin. When the train was about a mile and a half out from Dublin the conductor asked him for his ticket, and he informed the conductor that he had misplaced his ticket, or had lost it, and could not find it, that he had put it in some one of his pockets. The conductor went through the train, taking up tickets, and when the conductor returned the plaintiff was still searching for his ticket. When the conductor came back the second time the plaintiff was satisfied that he had lost his ticket. He did not offer to pay the cash fare at either the ticket rate or the train rate, and the conductor caused the train to be brought to a stop and asked him to alight. This was done in a proper manner, and the plaintiff complied with the request. After he had

left the train and when it was moving slowly forward, he found his ticket in one of his pockets. He testified, on the direct-examination, that he so informed the conductor, and that the conductor did not invite him to board the train. He could have boarded the train after it was in motion, but did not do so, because the conductor had said to him that he must get off. On cross-examination he testified: "As the train moved off I walked on up towards the baggage-car. I was trying to show the conductor my ticket. I didn't get back on the train, because the conductor put me off. The reason I didn't get back on the train after I had found my ticket, the conductor didn't say so. ... I couldn't understand what he said when I told him I had found my ticket. I don't know whether he said for me to get back on or not. I don't know but what he told me to get back on the train. I didn't understand what he was saying." So far as the plaintiff could testify, the conductor did not know that he had found his ticket. The plaintiff was about three miles and a half from his home when he was invited to leave the train. This distance he walked. He was accustomed to walk this distance. It did not hurt him. He did not get wet, but got sprinkled some. He was in good health on that night, and suffered no injury from the walk. At the conclusion of the plaintiff's testimony, the judge granted a nonsuit.

*S. P. Kea, Fred Kea,* for plaintiff.

*R. M. Daley, J. E. Burch, J. S. Adams,* for defendant.

GEORGE, J. (After stating the foregoing facts.) 1, 2. This suit was for wrongful expulsion, and not for damage sustained by the plaintiff as a result of his being compelled to leave the train. There is nothing in the evidence to warrant the jury to find that the time, the place, or the manner of the expulsion was wrongful. In *Harp* v. *Southern Railway Co.,* 119 *Ga.* 927 (47 S. E. 206, 100 Am. St. R. 212), it was said: "The fact that one actually purchased a ticket, and that this was known to the agent who sold it, or to the gatekeeper who examined it, or to employees on the train who saw it, would not relieve the passenger of the obligation to surrender it to the conductor. . . The mere fact that the plaintiff has a ticket does not, therefore, necessarily establish his right to be transported on a given train. . . When the conductor makes his demand he is entitled to have the ticket surrendered. He can not be required to hear evidence or investi-

gate the bona fides of the passenger's excuse for its non-delivery, nor to wait until he arrives at the next station and, by telegraphic correspondence with the selling agent, undertake to verify the correctness of the plaintiff's statement, or determine the character and validity of the ticket sold." In the case at bar it affirmatively appeared from the testimony of the plaintiff that he had misplaced his ticket and was unable to find it and surrender it to the conductor upon demand. He was given a reasonable opportunity to produce and deliver his ticket. Unable to do so, he did not offer to pay a cash fare, either at the train rate or at the ticket rate, to the point of his destination. The ejection of the plaintiff from the train was therefore proper. The decision in *Wilson* v. *Southern Railway Co.*, 143 *Ga.* 189 (84 S. E. 445), is controlling upon the case at bar. The headnote in that case is as follows: "In a suit for damages against a carrier of passengers, for a wrongful expulsion by defendant's agent of plaintiff, who was without a ticket on defendant's cars, where the petition fails to allege that the plaintiff tendered to the defendant's ticket-collector the proper fare at the train rate in lieu of a ticket when the same was demanded of him, such petition set forth no cause of action, and the court did not err in sustaining a proper demurrer thereto." In that case the petition alleged that the plaintiff, before boarding the train, had purchased a ticket. He misplaced or lost it through no fault of the railroad company. Although he was able to produce fairly satisfactory proof of the purchase of the ticket by him, and offered to pay the regular ticket fare to the point of his destination, the ticket-collector caused him to be ejected from the train. In that case, as in this, the plaintiff, if he in fact purchased a ticket, had lost it. In that case he offered to pay the regular ticket rate, while in this case he did not offer to pay a cash fare. Counsel for the plaintiff attempt to distinguish that case from this case by the fact that Wilson admitted the loss of his ticket, while in this case the plaintiff, at the time of his expulsion, was still engaged in a search for his ticket. This fact certainly can not be of any relevancy. One might search for a ticket, either in good or bad faith, from the beginning to the end of his journey. Certainly his mere belief that he may yet be able to find the ticket will not entitle one to remain on the train. The railroad company, in the discharge of its duties to the public, can not stop and wait until the passenger

has satisfied himself that the ticket is lost beyond recall. If the train continue to run as long as the passenger is willing to search for his ticket, he may thereby have his ride without paying his fare. His misfortune, if he has in fact lost his ticket, can not prejudice the right of the railroad company to eject him from its train upon the failure to surrender his ticket after he has been given a reasonable opportunity to find and present the ticket. He may prevent the eviction by offering to pay the cash fare, but this must be done before the train is brought to a stop.

3. The principle announced in the third headnote needs no elaboration. So far as we know, the courts of this State have not gone beyond the rule there announced, yet the writer is clear that a passenger who has been rightfully expelled, even at a station, for refusing to pay fare, can not continue his passage by paying fare from that point only, but must pay for the whole distance actually traveled. Compare *Ga. Southern & Fla. R. Co.* v. *Asmore*, 88 *Ga.* 529 (15 S. E. 13, 16 L. R. A. 53). The language of Chief Justice Bleckley in that opinion is pertinent: "If he [the passenger] higgles and hesitates until he becomes a proper subject for ejection, and until steps have been taken to that end, he is too late. Any rule which would allow one passenger to play fast and loose with the conductor would allow all the passengers to do so, and a train might thus be kept halting and alternating between running at ordinary speed and stopping throughout the whole of its journey, and to this embarrassment not only one train, but every train run for the carriage of passengers, would be exposed."

4. In view of the plaintiff's testimony, which is given almost in full in the statement preceding this opinion, a further discussion of the principle announced in the fourth headnote is unnecessary. The conductor invited the plaintiff to leave the train. The invitation or demand to leave the train was not made under circumstances calculated to embarrass the plaintiff. He got off the train safely and continued his journey on foot, without injury or inconvenience. He was accustomed to walk the distance from the point of his expulsion to his home, and on this occasion the walk resulted in no injury to him. There is nothing in the evidence to indicate that the place of his ejection was an improper place. Compare *Samples* v. *Georgia & Florida Ry. Co.*, 143 *Ga.* 805 (85 S. E. 1002). The nonsuit was proper.

       *Judgment affirmed. Wade, C. J., and Luke, J., concur.*