JAMES KELLY AND BENJAMIN DOREMUS V. JAMES T. EMERY ET AL.

*Province of jury—Charge of court.*

1. The *weight* to be given to testimony is for the jury, and it is their province to determine whether that of one witness overbalances that of another.

2. An instruction which, after referring to the testimony of two witnesses upon a given point, informs the jury that the testimony of one of them "very materially modifies that of the other," held prejudicial, and ground for reversal.

3. A statement that the case had been once tried, that the amount involved was not large, and that neither the parties nor county could afford to have the parties litigate forever, coupled with a wish that the jury might be able to arrive at a conclusion and settle the facts in the case, is simply an admonition to agree, which the court might very properly make.

Error to Bay. (Cobb, J.) Argued January 31, 1889. Decided June 14, 1889.

Assumpsit. Defendants bring error. Reversed. The facts are stated in the opinion.

*T. A. E. & J. C. Weadock,* for appellants.

*A. McDonell,* for plaintiffs.

LONG, J. This is an action of assumpsit brought to recover the balance claimed by plaintiffs to be due them under a written contract for building a schooner for defendants at Bay City, and for extra work and material thereon.

On the trial in the court below the plaintiffs had verdict and judgment for the sum of $224.78.

Defendants bring error.

Under the contract the vessel was to be delivered in the water on or before April 15, 1887. The full price for the building of the vessel was to be $1,800. It is conceded that prior to the commencement of the suit the defendants had paid to plaintiffs the full contract price, less $174.78; and the action was brought to recover this sum under the contract, and also to recover $100 for extra work and material in making a bilge-strake half an inch thicker than the contract required.

The declaration was on the common counts in assumpsit, with a bill of particulars, claiming the $174.78 under the contract, and the $100 for extra work and material for the bilge-strake not provided for in the contract.

The defendants, with their plea of the general issue, gave notice of several matters of defense, as defective construction of the schooner, and also that the same was not completed on April 15, 1887, nor did plaintiffs ever complete it, but threatened to keep the same on the stocks until July thereafter, doing a trifling amount of work each day; and defendants were compelled to lay out large sums of money in order to make the same seaworthy and fit for use.

These damages defendants claimed in said notice to recoup on the trial.

The defense was that the vessel was unseaworthy when delivered to defendants, and that they were compelled to pay out this $174.78, kept back from the plaintiffs upon her, in order to make her seaworthy, and that they were not liable for the extra work done by plaintiffs in putting on the bilge-strake.

Defendants also claimed damages at the rate of five dollars for each working day beyond the time when the vessel should have been completed by plaintiffs, that being claimed as the value of the use of the vessel.

Defendants also claimed damages by way of recoupment for the difference in the value of the vessel as she was constructed by plaintiffs, and what she would have been worth if constructed in a workmanlike manner.

On the trial plaintiffs gave testimony tending to show that defendant Donahue took charge of and looked after the work of building the vessel, and that they followed his directions; that Donahue went to the ship-yard, and selected the timber and planks for the vessel, gave directions about its construction, and that they followed the instructions given by him in building her; and that, while the contract only called for 2½-inch plank, under Donahue's direction they put on 3-inch.

Plaintiffs also gave evidence tending to show that the vessel was launched and delivered in the water April 16, and that the first load hauled by her was stone, and that the extra work on her was worth $100.

Plaintiffs also claim that work was done on the vessel by them after she was launched that could not have been done before.

The defendants put in evidence a receipt from C. Wheeler, who owns the dry-dock, showing a payment to him by the defendants on June 24, 1887, of the $174.78, which they kept back from the contract price.

This was made up of the following items:

| | |
|---|---:|
| Docking | $30.00 |
| 136 lbs. oakum | 20.40 |
| 1¾ days foreman, $8.75; 55 ft. oak, $1.65 | 10.40 |
| 75 lbs. tallow, $7.50; 31¼ days labor, $96.75 | 104.25 |
| 85 lbs. spikes, $1.75; 8 lbs. iron, 32 cents | 2.07 |
| 50 lbs. paint, $4.00; 22 ft. decking, 66 cents | 4.66 |
| Blacksmithing | 8.00 |
| | $174.78 |

Testimony was given by defendants showing this work was worth the prices charged, and that the work was necessary to make the vessel seaworthy. Testimony was also given tending to show that the putting on of the bilge-strake was not worth the amount charged.

Defendants also gave evidence tending to show that the difference in value between the vessel as built and the vessel as it was to be built under the contract would be from three to five hundred dollars.

Defendant Donahue was called as a witness, and gave evidence tending to show that plaintiffs did not do the work according to the contract; that the vessel was not properly caulked, and that inferior material was used; that the planking was not driven up to the frames, and had to be cut out; that plaintiffs worked upon her to June 1; that defendants then took her, and went to Grindstone City for stone; that the vessel would carry 24 to 25 cords of stone, 140 tons, but that they only put on 21 cords, properly stowed, and while being loaded she began leaking through her seams, which were not properly caulked; that she leaked a stream as large as one's hand, so that they were compelled to pump her out.

Defendant further testified that the value of the use of the vessel from the opening of navigation to June 2 was from five to six dollars per day, and that they had use for her all that time.

Plaintiffs in rebuttal introduced testimony tending to show that it was usual for new vessels to leak, and that Don-

ahue supervised the building of the vessel. There was also evidence tending to show that the vessel was built in a good and workman-like manner.

The theory and claim of the defendants, as well as the claim of the plaintiffs, was submitted to the jury by the court.

The court instructed the jury as to the claim of the plaintiffs as follows:

"Now, the plaintiffs claim here $174,78 for the balance of this contract price. It is conceded that this has not been paid to them, and they also claim that the defendants, after the work was commenced, wanted a bilge-strake put on half an inch thicker than the contract called for, and that they did it at their request, and that the difference between the two was one hundred dollars; so that the plaintiffs claim both the $174.78 and the $100, making $274.78. That is the outside limit of the plaintiffs' demand here, and the outside limit of any verdict that you can give them, under any circumstances."

Referring to the claim of the defendants, the court instructed the jury:

"The defendants claim three different items:

"For the $174.78 they paid to Mr. Wheeler, claiming that it was necessary to do it in order to get the vessel in such shape as to make her fit to use.

"They also claim damages for not having the use of the vessel. * * * * * * * * * * * * * * *

"They also claim for the difference in the value of the vessel built as she was built, and the value that she would have been if she had been built according to the contract. * * *

"What the law aims at in this case, and all other cases of this kind, is compensation, and no more. Each party should be made good for any loss he has suffered by the wrongful fault or neglect or delay of the other party. If either party failed to do what he agreed to do, and by that failure the other party has suffered loss, then the party in default ought to make good that loss, and that is all he is required to do."

No complaint is made of these portions of the charge of

the court, but counsel for the defendants contend that the court was in error in charging the jury as follows:

"Then these defective deck plank, a specimen of which has been shown here. The testimony is very conflicting upon that, and of course you have got to find out and determine, in order to arrive at a verdict, whether these deck planks were proper to be put into a vessel or not. Mr. Wheeler, who appears to be a very intelligent man, and to be very well versed in the business, gives his version of it. Capt. Davidson, who seems to be also an equally intelligent man, and equally well up in the business,—his testimony modifies that of Mr. Wheeler very materially in that respect.''

This latter portion counsel for defendants contend was an intimation by the court that the testimony of Davidson modified or overbalanced that of Wheeler, and that the defendants were prejudiced by such statement.

It is well settled that the weight to be given to the testimony of any witness is for the jury, and it is their province to determine whether the testimony of one witness overbalances that of another.

We think this language of the court is susceptible of the construction contended for by counsel for defendants, and might be construed as an intimation from the court that they were to give greater weight to the testimony of Mr. Davidson than to that of Mr. Wheeler. It was a statement that they did not agree in their testimony. We think it a very strong intimation that the jury should, in considering the testimony of Mr. Wheeler, take into consideration the fact that Mr. Davidson's testimony modified it, and therefore they should not give it that credit which they otherwise might. At least this portion of the charge is open to that construction, and we think may have prejudiced the defendants' case.

Defendants' counsel also insist that the court erred in charging the jury as follows:

"This case has already been tried once, and the amount

involved is not very large, and the parties cannot afford to litigate it forever, and the county cannot afford to have them do it. You see it takes some time to try the case, and I hope you will be able to arrive at a conclusion, and settle the facts in the case, at least."

It is claimed that by this charge the jury were coerced into finding a verdict.

This statement by the court could not have had any such effect. It was simply an admonition to the jury to agree, if possible, upon the facts of the case, and one which the court might very properly make.

It appears that the case had once been tried, and on that trial the jury failed to agree, there being such a conflict of testimony.

We do not see how this portion of the charge affected the verdict, or had any influence in favor of or against either of the parties.

It was important in that, as in other cases, that the jury settle the disputed questions of fact arising on the trial; and the court, without intimating its opinion of the facts upon this part of the case, advised the jury that it was for the best interests of the parties, and would save costs to the county, if they could in that trial settle the facts in the case. No one could be prejudiced by this portion of the charge.

Some other errors are alleged upon the manner of the examination of witnesses by plaintiffs' counsel, and to the admission of testimony by the court under objection of defendants' counsel, but we do not deem them of sufficient importance to discuss them.

While it may be true that defendants should have been allowed some of the claims set up by way of set-off and recoupment of damages, yet these were matters of fact for the determination of the jury, and under a proper charge they must determine them.

Defendants' counsel characterize the verdict as a most extraordinary one, and it may be so, but the most of the mat-

ters involved are purely questions of fact, which, under proper instructions from the court, it is the province of a jury to determine.

For the error in the charge referred to the judgment of the court below must be reversed, with costs, and a new trial ordered.

The other Justices concurred. .