HOUSTON & TEXAS CENTRAL RAILROAD COMPANY ET AL. V. O. DARWIN.

Decided October 16, 1907.

**1.—Injury to Crop—Value—Evidence.**

Where a cotton crop was destroyed by overflow when only partly up, evidence of the cost of preparing the ground and planting the crop is admissible and furnishes evidence as to its value.

**2.—Charge—Exhortation to Find a Verdict.**

Oral exhortation by the judge to the jury to continue their consideration of the case in the endeavor to reach a verdict held not improper.

Appeal from the District Court of McLennan County. Tried below before the Hon. Marshall Surratt.

*John M. King* and *Baker & Thomas,* for appellant, International & G. N. Ry. Co., and *Baker, Botts, Parker & Garwood* and *O. L. Stribling,* for appellant, Houston & T. C. Ry. Co.

Plaintiff must show the value of crops destroyed, and evidence of cost of putting in is not sufficient. International & G. N. Ry. Co. v. Pape, 73 Texas, 501; Gulf, C. & S. F. Ry. Co. v. McGowan

73 Texas, 355; Galveston, H. & S. A. Ry. Co. v. Borsky, 2 Texas Civ. App., 545; Gulf, C. & S. F. Ry. Co. v. Nicholson, 25 S. W. Rep., 54; Gulf, C. & S. F. Ry. Co. v. Simonton, 2 Texas Civ. App., 558; City of Paris v. Tucker, 15 Texas Ct. Rep., 241.

The verbal discourse by the court to the jury was calculated to drive them into finding a verdict they would not otherwise have rendered.   11 A. & E. Ency. of Law (1 Ed.), 258, note 5; People v. Engle, 76 N. W. (Sup. Ct. Mich.), 502.   This last case is taken from the May-June, 1899, American Law Review, page 456.

*Boynton & Boynton* and *Sleeper & Kendall,* for appellee.—The evidence of the appellee was sufficient to show the value of the crops destroyed.   Galveston, H. & S. A. Ry. Co. v. Parr, 8 Texas Civ. App., 280; Missouri P. Ry. Co. v. Cox, 2 Texas App. Civ., 217; Missouri P. Ry. Co. v. Wise, 3 Texas App. Civ., 461; Gulf, C. & S. F. Ry. Co. v. Hedrick, 7 S. W., 353; Sabine & E. T. Ry. Co. v. Joackimi, 58 Texas, 460; Texas & St. Louis Ry. Co v. Young, 60 Texas, 204.

KEY, Associate Justice.—Appellee brought this suit against appellants, the Houston & T. C. R. R. Co., and the International & G. N. R. R. Co., to recover damages on account of alleged injuries to his farm.   He alleged that the farm was injured by overflows from Tehaucana Creek, which overflows he charged were caused by reason of the failure of appellants to construct and maintain proper and sufficient openings through their roadbed across the valley of the creek referred to.

Appellants answered by general demurrer, general denial and by special plea, alleging that the overflows referred to were caused by very high waters in the Brazos River, resulting from unprecedented rainfalls, thereby causing Tehaucana Creek to flow back upon appellee's land.

There was a jury trial terminating in a verdict for the appellee, and both railroad companies have appealed.

Under the first assignment of error, which relates to the action of the court in refusing a peremptory instruction for the defendants, it is contended that such instruction should have been given, because there was no legal evidence of the value of the crops destroyed.   We overrule that assignment because the plaintiff, after testifying that while his crop of cotton had been planted, but little of it was up at the time of the flood, and that it had no market value, testified that it would cost from $3 to $4 an acre to prepare the land and plant the crop.   He also stated that it would cost about the same amount to put the corn in the condition it was in at the time of the floo...   All this testimony was objected to, and its admission is assigned as error, but we overrule both assignments and hold that the testimony was admissible and the case properly submitted to the jury.   (Sabine & E. T. Ry. v. Joackimi, 58 Texas, 460; Texas & St. Louis v. Young, 60 Texas, 204; Galveston, H. & S. A. Ry. v. Parr, 8 Texas Civ. App., 280; Ry. v. Reed, 1 Texas App., 461.)

There are several assignments which complain of the verdict as being unsupported by and contrary to the evidence; and it is earnestly urged that the testimony shows that the overflows in question were caused by excessive rises in the Brazos River, thereby throwing the waters of the creek back upon the plaintiff's land. Much testimony was submitted tending to support the defenses relied on in the court below, but a careful examination of the statement of facts leads to the conclusion, and we hold, that in all the respects complained of the verdict is supported by testimony. We therefore, in support of the verdict, find as facts that the overflows in question were caused in part by the failure of the defendants to so construct their roadbed as not to impede or obstruct the waters of Tehaucana Creek; and that, as a result of such failure, the plaintiff sustained injuries to the extent of the verdict.

The charge of the court presented the case to the jury with such degree of fullness and accuracy as the rights of the parties, under the testimony submitted, required, and no error was committed in refusing requested instructions.

By the 6th assignment a reversal is urged on account of remarks made by the judge to the jury after the case had been submitted to them. The bill of exception shows these facts:

"After the testimony had closed, the argument of counsel was finished, and the jury had been charged by the court on the 22d day of May, 1906, the jury retired to consider their verdict, and after having the case under consideration until the 24th day of May, the court, without consulting counsel for the plaintiff or the defendant, and on his own motion and without request from the jury, delivered to them the following oral charge and lecture, to wit: "Gentlemen of the Jury: I judge from the expression of several of the jurors yesterday evening that some of you were getting impatient because you have not readily come to a verdict, and I want to say to you not to get discouraged at your delay in reaching a verdict, but work along just exactly like we have worked in the trial of the case. The only way the business of the court can be dispatched is by verdicts. Of course, if you should not be able to agree the court will not keep you together any unreasonable length of time, but it is its duty to give you a fair opportunity to agree upon a verdict before discharging you, and it often takes some time for jurors to fully consider a case so as to arrive at one, but if you gentlemen were to get bullheaded with one another, and would not reason together in an effort to arrive at a verdict, then, of course, there would be no reason in keeping you together longer. Twelve independent thinking men can only arrive at a verdict usually by discussing the subject before them openly and freely, and it takes time to do this, and by such discussions they arrive at the common ground upon which all can stand or finally disagree, as the case may be. I should dislike for any of you to believe the man who said the horse was sixteen feet high and then stick to it because he had said that first. I would not say anything to influence either to arrive at a verdict or as to what your verdict should be, but it is sometimes the case when we find

others differ from us that we begin to ask ourselves why it is. We concede that those who differ from us are just as honest and sincere and know as much as we ourselves do about the matter, and this naturally puts one to thinking why this is, and in that way sometimes we come to the conclusion that our first impressions were ·wrong. It is no ·reflection on a man that after seeing a matter one way he is enabled to see it in another. The highest courts in the country, after deciding questions sometimes find out they are wrong after further investigation and change their opinions, and jurors are exclusive judges of the facts and should arrive at conclusions after a thorough discussion of the matter before them, and I would not have you become discouraged because you have not reached a conclusion as promptly as some of you perhaps think you should and give up. We often reason out a thing- by studying over it that at first seemed impossible. I suggest to you that you go over these matters thoroughly and patiently, and do not think for a moment that the court is trying to force a verdict from you, because it is not, and it has the greatest confidence in you, but only desires to caution you against impatience or giving up. It may sometimes occur that after a matter for some time the jurors might become tired, and if such is the case, ·you might take a rest, and that may enable you to get into new channels of thought and out of the old rut if you should happen to be in any particular line of thought. You may retire.'

"To which charge and lecture, the defendants, by their counsel, then and there in open court excepted, and now, within twenty days after the final adjournment of said court, tender this their bill of exceptions and pray that the same may be examined, signed and by the court approved and ordered filed as a part of the record in this cause; this the —— day of July, A. D. 1906.

"The foregoing bill is approved with this statement as part thereof: After the case was submitted to the jury on the 22d day of May, the court did not keep them together during its several recesses, but permitted them to separate at noon and at night. Upon adjournment upon the evening of the 23d, the jury then having had the case under advisement for more than a day, after the court had excused them until 9 o'clock next morning he became aware of the fact that many of them were disappointed, in that the court did not discharge them finally, and upon reassembling the next morning, before they retired the foregoing statement was made to them. Afterwards, sometime during the forenoon of the same day, the jury came in and reported that they had agreed upon a verdict; whereupon the court, before receiving the same, asked each juror if the verdict was his verdict and one that his conscience fully approved, which being answered in the affirmative by each, he was then asked if he had been in any manner influenced to arrive at the verdict by anything that had been said by the court to them before they retired on that morning, and assured each one of the jurors that the court desired them to be perfectly candid with the court, and that the court would be obliged and pleased if either one of them did not approve of the verdict fully, or if he was influenced in any

manner to arrive at said verdict by the statement of the court, to make it known to the court at that time, and each juror assured the court that he had not been influenced in any manner in arriving at his verdict by said statements of the court to them."

While we hold that it would constitute reversible error for a trial judge to say or do anything reasonably calculated to influence a jury to decide a case in any particular way or in favor of a particular party, or that might tend to coerce any member of the jury, we are unable to agree with appellants' contention that the remarks here complained of fall within the rule referred to. It is not contended, nor does ground exist for such contention, that what the judge said on the occasion referred to contained any intimation of his opinion as to how the case should be decided, nor do we believe that his remarks were calculated to coerce or force the jury to agree upon a verdict.

No reversible error has been shown and the judgment is affirmed.

*Affirmed.*

Writ of error refused.