MISSOURI, K. & T. RY. CO. OF TEXAS v. BARBER.

(Court of Civil Appeals of Texas. Dallas. Jan. 3, 1914. Rehearing Denied Jan. 31, 1914.)

1. APPEAL AND ERROR (§ 1033*)—TRIAL (§ 203*)—REVIEW—HARMLESS ERROR.

Where the parties to a personal injury action agreed what issue should be submitted, the court should have confined the charge to that issue, but the erroneous submission of the issue of plaintiff's contributory negligence was harmless to defendant, being a matter of defense which would cast a greater burden only on plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4052–4062; Dec. Dig. § 1033;* Trial, Cent. Dig. §§ 477–479; Dec. Dig. § 203.*]

2. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL—REQUEST.

The refusal of a request covered by the charge given is not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

3. APPEAL AND ERROR (§ 1066*)—REVIEW—HARMLESS ERROR—INSTRUCTIONS.

In a personal injury action by a servant, the giving of a charge as to the risks assumed by employés, which was not warranted by the evidence, must be considered harmless, being a matter of defense and not calculated to influence the jury against the master.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. § 1066.*]

4. TRIAL (§ 256*)—INSTRUCTIONS—REQUESTS.

Where a charge is incomplete, but not erroneous, a party desiring to complain thereof must request a special charge supplying the defect.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 628–641; Dec. Dig. § 256.*]

5. MASTER AND SERVANT (§ 296*)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

Where a switchman was opening the couplings, which did not work when the cars were shoved together, a charge that he had the right to assume that the engineer in charge of the locomotive would not move the same while it was standing still without a signal is proper.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*]

6. TRIAL (§ 314*)—CONDUCT OF COURT—COERCION OF JURY.

In an employé's action against a railroad Company for personal injuries, the action of the trial court in urging the jury to agree, and retaining them for two days after their statement that they could not agree and wished to be discharged, does not constitute reversible error, where it did not appear that there was any suggestion to the jury to compromise, or that the statement that the trial was an expense to the county, and that verdicts must be had, was more in favor of one party than another.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 472, 473, 747, 748; Dec. Dig. § 314.*]

Appeal from District Court, Grayson County; W. M. Peck, Judge.

Action by J. D. Barber against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

A. S. Coke and A. H. McKnight, both of Dallas, and Head, Smith, Maxey & Head, of Sherman, for appellant. E. J. Smith, of Denison, and Freeman & Batsell, of Sherman, for appellee.

RAINEY, C. J. Appellee, while in the employ of appellant as a switchman, was, through the negligence of appellant's engineer, seriously injured, which caused him to contract tuberculosis, and by which he has been damaged, for which damage he sued the

appellant. Appellant answered by plea of contributory negligence and assumed risk, and further that appellee and appellant were engaged in interstate commerce, and that appellee's cause of action arose under, and is governed by, Acts of Congress and Laws of the United States, and not of the state of Texas. A trial resulted in a verdict and judgment for appellee for $7,000, from which this appeal is taken.

The first, second, third, and fourth assignments of error complain of the court's charge on the question of contributory negligence.

[1] The proposition submitted is that: "An issue not raised by the evidence should not be given in charge to the jury; and to give such an issue in charge is reversible error when such charge was calculated to confuse or mislead the jury to appellant's prejudice." Before the court read his charge to the jury he submitted it to the attorneys for inspection, the court's attention was called to the fact that it was agreed between the parties that one issue should be submitted to the jury, and that was whether or not the plaintiff gave the engineer a signal to come ahead, after having given a stop signal, or whether the last signal by plaintiff was a stop signal, and the engineer came ahead without a signal. The parties having agreed on the necessary issue to be submitted to the jury we think the court should have confined his charge to that issue, yet we are unable to see that any injury resulted to appellant by reason of the court charging on contributory negligence. If it could be said that there was no evidence raising the question of contributory negligence, the charge was favorable to appellant in that it permitted the jury to find, on that issue, which, if found in the affirmative, would have lessened the damages to which appellee was entitled.

The evidence shows that appellee was employed as switchman for appellant, and while in the performance of that duty it was necessary in making up a train to couple some cars; that he signaled the engineer operating the engine to shove the cars together that they be coupled, and as he did so appellee stepped in between the cars to make the coupling, which failed. Appellee, seeing the knuckle needed adjusting, gave the engineer the stop signal, and then stepped in between the cars, and the engineer, having disregarded the stop signal, drove the cars together and mashed appellee in the left breast, which injured him and eventually produced tuberculosis.

[2] There was testimony which, in the absence of the agreement as to the issue that was to be submitted, called for a charge on contributory negligence. In connection with appellant's ideas of the agreement as to the issue to be submitted the following charge was asked and refused by the court, to wit: "If you find that at the time, or immediately before, he was injured plaintiff did not give said engineer a signal to come ahead, and that said engineer moved said engine and cars without signal so to do, you will find for plaintiff; on the other hand, if you find that plaintiff did give said engineer a signal to move said engine and cars, and that said engineer moved same in obedience to such signal, you will find for the defendant." The theory embraced in this special charge was covered by the main charge, and there was no error in refusing to give said charge. Under the circumstances as developed the foregoing assignments are overruled.

[3] 2. Appellant's fifth assignment complains as follows: "The court erred in giving to the jury the following portion of paragraph No. 6, of its general charge: 'An employé of a railway company is held, in law, to assume such risks as are ordinarily incident to the service he is employed to perform, but a risk which arises from the negligence of the railway company is not such risk as is ordinarily incident to the service, and is not such a risk as is assumed by the employé, unless the negligence, and the risk arising therefrom, be known to him, or would be known to him in the exercise of ordinary care, in the discharge of the duties of his employment, and where the risk is known to the employed, or would be known to him by the exercise of ordinary care, the risk is not assumed by him, and is not available as a defense where a person of ordinary care would have continued in the service, with the knowledge of the defect and danger; and so plaintiff in this case, when he entered the service of the defendant as switchman, assumed all the risks or danger ordinarily incident to such employment, as the law relating to the assumption of such risks is above explained, but he did not assume any risk or danger arising from any negligence of the defendant.'" The first proposition submitted is: "The issue of assumed risk was not raised by the evidence, and the court should not have given a charge thereon, and the giving of any charge thereon, and particularly the giving of the charge as given by the court, was calculated to mislead and confuse the jury and was prejudicial to the defendant." We think the evidence warranted giving the charge of assumed risk. If it was not warranted, the charge being one of defense, it was not calculated to injuriously influence the jury against the defendant, and it was harmless.

[4] Under appellant's second proposition relating to the knowledge of appellee as to the negligence of appellant, we see no error in the charge, but if error, it was one of omission, and no special charge in relation thereto was requested by appellant, and it is in no attitude to complain.

[5] 3. The court charged the jury: "He [plaintiff] had the right to assume that defendant would perform its duty to exercise toward him ordinary care, in other words,

he had the right to assume that the engineer in charge of the locomotive would not, while the same was standing still, move the same without a signal so to do." This, under the circumstances, announced a correct proposition of law, and the court committed no error in so telling the jury.

[6] 4. The appellant reserved bill of exception to the proceedings on trial as follows:

"Be it remembered that upon the trial of the above numbered and entitled cause the jury, after being instructed by the court, retired to consider their verdict on the morning of Wednesday, February 19th. The jury stayed in retirement considering their verdict the remainder of that day, and at adjourning time, to wit, 5 p. m., they had not agreed. Upon the court's instructions they returned and considered further on Thursday morning; after being out all Thursday morning, they reported to the court at noon that they were hung and could not agree; the court thereupon made remarks to the jury substantially as hereinafter quoted, and instructed them to report back after dinner, at 1:30 p. m., to consider further their verdict. This they did, and remained out all Thursday afternoon; at adjourning time, 5 p. m., they again reported to the court that they were hung and could not agree, and asked to be discharged; thereupon the court delivered to them the following remarks:

" 'The Court: Have you been able to agree yet?

" 'Foreman: No, sir.

" 'The Court: Now, in order to restate, as I did this morning—I know you gentlemen appreciate the importance of arriving at a verdict, and I appreciate the responsibility on you. The court is now, you see, where it can't turn a wheel. As I stated this morning, the only way we can transact business is through verdicts of the juries, because this is a jury case and nobody but a jury can render a verdict. I have no power. I don't want the power of doing it. The law makes it your duty, and I think the law wisely leaves it with the juries. Now I don't know —you see if you were to quit now and couldn't agree, we would have to get another jury at the next term of court. I don't know whether we could get a better jury than you are or not. Now I appreciate the fact that you have differences of opinion, and men of pronounced views and independent thought—they will have differences of opinion about a great many things. We very often agree, and generally agree, to disagree, but in this matter you all have to agree on something, or else of course if that is an impossibility, then I would have to discharge you. I don't feel that—you see you just took this case yesterday, I believe about 1:30, and I don't feel like with the great expense that it will be to try this case over, under the circumstances I don't want to punish you gentlemen. I sympathize with you. I know some of you probably want to be at home with your families and looking after your business, and I certainly sympathize with you in that respect. If I were to simply consult my sympathy I would just simply tell you to go home, and we would try it before another jury. Now there is the right of the county and of the people to have verdicts if it is possible. Of course if you reach a point where you can't agree, can't get together, why then that is a different matter. I suppose you stand somewhat as you did this morning numerically?

" 'Foreman: Yes, sir; one change only.

" 'The Court: Now, as I said, I don't believe I ought to discharge you yet. I know you have been worrying over this matter all day, and I have an idea if you all go home and get a good night's rest and get back here in the morning—it very often happens when people sleep over their troubles, or over their work, why the next morning they may see things clearly that didn't appear so the evening before. Now I want to say to you, gentlemen, that it is not my intention to try to force you into any verdict. I wouldn't have a right to do that, and I certainly wouldn't do it if I could. If I had a right to, I wouldn't force you to it against your best judgment, but the point has come to this now: That I think you are at the end of another day's work on the case, and yet you have only had about a day and a half consideration of it, and I am going to ask you to come back here in the morning and take it up where you left off, and consider it again and see if you can't get together on a proposition that you can all agree to in regard to a verdict.'

"On Friday morning, acting upon the court's instructions as above, the jury again retired to consider the case and remained out all Friday morning still being unable to agree, and so reported to the court and asked to be discharged, which request was again refused by the court, the court instructing them to return against at 1:30 p. m. to consider further their verdict, which the jury did, and after being out until about 4 p. m. of Friday afternoon, the jury returned into court the verdict rendered in this case, to which action of the court in making said remarks to the jury, and particularly the portions thereof with reference to the expense to the county, and the fact that they would want to go home to their families and look after their business, and that the county and the people had a right to have verdicts, and insisting that the jury should agree, the defendant excepted, and now tenders this, its bill of exceptions No. 4, and asks that the same be allowed, which is accordingly done."

While we do not approve the practice of lecturing the jury, as was done by the trial judge in this instance, we are not prepared to say that the language used influenced the

verdict, or was calculated to influence it one way or the other.

In the case of Railway Co. v. Johnson, 99 Tex. 337, 90 S. W. 164, where the jury, after retiring and considering the case for two days, returned into court and propounded the following question: "Is it legal and right for a jury, in case they have failed to agree upon a verdict in a case, to make concessions in order to agree upon a verdict?" to which the court replied, "Will say that it is entirely lawful and proper to make concessions, provided, of course, your verdict as agreed to, is based alone upon the law as given in the charge, and the facts as you find from the evidence." The testimony sharply conflicted upon the material issues, and Judge Williams, speaking for the court, held that the trial court should not have advised the jury at all, and says: "The fundamental objection to such instructions is that the law, in our opinion, prescribes no rule for the court to lay down except that the jury are to find in accordance with the truth as their judgments, honestly applied to the evidence, lead them to believe it to be, or, as their oath expresses it, 'that they will a true verdict render according to the law and the evidence.' What prepossessions or inclinations of mind a juror may surrender consistently with an intelligent and conscientious discharge of this duty is for him alone to determine, for the reason that it is his judgment the law seeks to obtain, and he should be left to form it uninfluenced by advice from the court."

In the other case cited by appellant, the objectionable remarks were as to the right of the jury to compromise. There is no language in the lecture given to the jury in this case that tells the jury they may make concessions, etc., but merely urges the necessity of arriving at a verdict.

In Railway Co. v. Darwin, 47 Tex. Civ. App. 219, 105 S. W. 825, a lecture very similar to the one in this case was delivered to the jury and the Third Court of Appeals held that no such error was committed as required a reversal of the case. A writ of error was refused by the Supreme Court, and the Darwin Case was followed in Leland v. Chamberlin, 56 Tex. Civ. App. 256, 120 S. W. 1040.

We think no reversible error is shown, and that judgment of the court below is affirmed.