FLECK et al. v. MISSOURI, K. & T. RY. CO. OF TEXAS. (No. 7242.)

(Court of Civil Appeals of Texas. Galveston. Nov. 25, 1916. On Motion for Rehearing, Dec. 14, 1916.)

1. APPEAL AND ERROR ☞743(1) — ASSIGNMENTS OF ERROR.

An assignment of error, not supported by a statement from the record as required by the rules, need not be considered on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2999; Dec. Dig. ☞743(1).]

2. JUDGMENT ☞256(2) — CONFORMITY TO FINDINGS AND PROOF.

If the special findings of the jury, when considered with the facts established by the undisputed evidence, foreclose plaintiff's right to recover upon the case made by the pleadings, judgment is properly rendered for defendant, although the special findings do not dispose of all the issues made by the pleadings and evidence.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 447; Dec. Dig. ☞256(2).]

3. CARRIERS ☞355—PASSENGERS — DUTY TO PRODUCE TICKET—EJECTION.

Failure of a passenger to produce ticket or to pay fare when called for justifies ejection from the train, although the conductor knows that the passenger has purchased and lost his ticket, since passage tickets, being assignable in the absence of restrictive conditions, are good in the hands of any one.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1416–1422; Dec. Dig. ☞355.]

4. CARRIERS ☞355 — PASSENGERS — REFUSAL TO PAY CHILD'S FARE.

Refusal to pay fare for a young child over five years old justifies ejection of the passenger with the child, since the carrier could not put the child off the train and leave him with no one to take care of him.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1416–1422; Dec. Dig. ☞355.]

5. CARRIERS ☞358—PASSENGERS—EJECTING FOR FAILURE TO PAY FARE—OFFER TO PAY FARE.

When a passenger has failed and refused to produce a ticket or pay fare after having been given a reasonable opportunity to do so and the train is stopped to put him off, his offer to pay fare after the process of ejectment has begun will not render his ejectment unlawful.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1434–1438; Dec. Dig. ☞358.]

6. CARRIERS ☞358—PASSENGERS—EJECTMENT —RIGHT TO RE-ENTER TRAIN.

A passenger, who has been given opportunity to procure the money to pay his fare before ejectment, has no right to re-enter the train for the purpose of procuring money to pay his fare.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1434–1438; Dec. Dig. ☞358.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. APPEAL AND ERROR ⬅️1067 — HARMLESS ERROR.**

In action by passenger for damages in being ejected from train for nonpayment of fare, refusal to submit plaintiff's requested question to the jury whether the conductor, after plaintiff had been ejected, refused to permit her to re-enter the train for the purpose of procuring money from another with which to pay her fare was not prejudicial, where it appeared that after such ejectment she procured money from another, and took an interurban car to her destination without suffering appreciable delay.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. ⬅️1067; Trial, Cent. Dig. § 475.]

**8. TRIAL ⬅️314(1)—COERCING AGREEMENT OF JURY.**

A court's statement to a jury, reporting, after a day's deliberation, without verdict, that it had taken a long time to try the case and had been expensive, and that it was their duty, if possible, to get together on the issues, was not error as calculated to cause the members of the jury to surrender their convictions and render an improper verdict.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 472, 473, 747; Dec. Dig. ⬅️314(1).]

On Motion for Rehearing.

**9. CARRIERS ⬅️385 — PASSENGERS — EJECTING—SPECIAL ISSUES.**

Where the evidence was undisputed that a train was stopped and a passenger ejected for failure to pay fare at the station where the train usually stopped, it was not error to refuse to submit to the jury for plaintiff the question whether defendant's servants rendered the plaintiff and her children such assistance and accommodation as was required by defendant's rules and the circumstances of the case.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1501; Dec. Dig. ⬅️385.]

Appeal from District Court, Harris County; J. W. Wood, Special Judge.

Action by L. J. Fleck and another against the Missouri, Kansas & Texas Railway Company of Texas. From judgment for defendant, plaintiffs appeal. Affirmed.

Baldwin & Baldwin, of Houston, for appellants. C. C. Huff and A. H. McKnight, both of Dallas, and Baker, Botts, Parker & Garwood, of Houston, for appellee.

PLEASANTS, C. J. This suit was brought by appellants, L. J. Fleck and wife, against appellee to recover damages for the alleged unlawful ejection of Mrs. Fleck from a passenger train of appellee at its station in the city of Waco. The material allegations of plaintiffs' petition as set out in appellants' brief are as follows:

"Plaintiffs alleged that on or about the 25th of July, 1914, the plaintiff, Minnie Thomson Fleck, her niece, and her two children, took passage upon defendant's passenger train at Houston, Tex., for Hillsboro, Tex.; that she and her niece bought tickets; that upon leaving Houston the defendant's auditor took up her ticket and failed to return the same to her, and that she did not know this was necessary until the train arrived in Granger, or where the company changed their auditor; that after changing auditors (which was at Granger, Tex.), the second auditor demanded her ticket, when he was informed that she had delivered the same to the first auditor who had failed to return it to her, or at least that he knew she had a ticket to Hillsboro, and that she had a trunk check to show that she had a ticket; that if the first auditor had ever returned the ticket to her it had been lost. She alleged that the first auditor was then upon the train; that the second auditor had consulted him and others, and well knew that she had bought and paid for her ticket to Hillsboro; that, notwithstanding this, he demanded a repayment of her fare from Houston to Hillsboro, and also demanded the payment of fare for her little boy, who accompanied her, who was under eight and over five years of age. She alleged that she and her children were riding in a chair car, and that her niece was riding in the Pullman car; that she had no money with her with which to pay fare, and only had in her possession 60 cents; that her niece, who was riding in the Pullman car, had money, a sufficient amount to pay fare for all parties, and she could have gotten it from her niece if she had been allowed to do so. She alleged that she insisted with the second auditor that she was entitled to ride on the proof of her having bought and paid for her transportation from Houston to Hillsboro; that the second auditor conferred with the first auditor, who was still on the train, and that the first auditor informed the second auditor that she did have her ticket to Hillsboro, and that he punched it and gave it back to her; and upon the second auditor informing her of those facts, she told him that if the first auditor had ever returned the ticket, it had been lost, and she was unable to produce it. Full and complete allegations of the harsh conduct of the second conductor, or insulting language used by him toward her, are alleged, and it is alleged that just as the train was running into the city of Waco, the auditor informed her that if she did not pay her fare for herself and child, that he would eject her; that she then informed him that she could get the money with which to pay her fare by going into the Pullman car to see her niece; that the auditor refused to allow her so to do, and that when the conductor and other servants of the defendant attempted to eject her at Waco, which was done in a rude, harsh, and insulting manner, she again informed them she could and would get the money with which to pay her fare and that of her child as demanded by the auditor if they would permit her to go into the Pullman car to her niece, and that they refused to allow her to do so; that after she was ejected she made an effort to go into the Pullman car for this purpose, telling the auditor and the conductor that she wanted to get the money with which to pay her fare, and that she could get it from her niece, if permitted to do so, and they obstructed the way and refused to allow her to enter the Pullman car for this purpose; that her niece had the money with which to pay their fares, and she would have advanced it to her if she had been allowed to enter the Pullman car and made known to her niece her desire to get the money; that by this negligent conduct of the defendant's servants in ejecting her and her children in the hot sun at Waco, without funds with which to complete their journey, and without affording her a place of safety or proper protection after being ejected, and the insulting manner and humiliating manner in which this was done, she was made sick, and that she had remained sick for many days, suffering great mental pain and anguish, and was compelled to appeal to strangers in the city of Waco for the necessary assistance to complete her journey to Hillsboro to where she had kin and friends living. She alleged her damages to be $10,000."

The answer of defendant admits that Mrs. Fleck was ejected from appellant's train at Waco on the date alleged, but expressly de-

nies that defendant's employés in ejecting her from the train did so in a harsh or rude manner, or used any insulting or harsh language. It admits that Mrs. Fleck purchased a ticket at Houston, entitling her to transportation on defendant's train from said city to the city of Hillsboro, and that said ticket was presented to defendant's train auditor shortly after the train left Houston on its way to Hillsboro, but avers that after the ticket had been examined by said auditor, it was returned to her, and that she failed to produce it when called upon by the second auditor, whose duty it was to take up the ticket after defendant's train from Houston reached the town of Granger, where it was consolidated with a train on defendant's main line. The answer further alleged that Mrs. Fleck had with her an eight year old boy, for whom she purchased no ticket and refused to pay fare when it was demanded of her by said auditor, and that defendant had a rule, which was reasonable, requiring every passenger to buy a ticket and retain same in their possession until it is taken by the auditor whose duty it is to collect the tickets on the train on which the passenger is being transported, and that Mrs. Fleck was given every opportunity to present her ticket or pay fare for herself and son, but failed and refused to do so, and that after carrying her on the train from Granger to Waco, which consumed about two hours' time, during which time she was repeatedly urged and requested to pay fare for her son and for herself, the employés of defendant, because of her continued refusal to comply with said request, were compelled in the discharge of their duty to eject her from the train when it reached the defendant's station at Waco. It is averred that defendant's employés at all times treated Mrs. Fleck in a polite and courteous manner, and that she was repeatedly permitted, between Granger and Waco, to go in the car and consult with her niece, but that she failed to obtain money from her niece with which to pay her fare or the fare of her son, and made no effort to obtain it. The cause was submitted to a jury in the court below upon special issues, and upon a return of the verdict judgment was rendered in favor of defendant.

The undisputed evidence shows that the ticket from Houston to Hillsboro, which it is admitted Mrs. Fleck purchased and presented to the first auditor who took up tickets between Houston and Granger, was returned to her by said auditor, and was lost or misplaced by Mrs. Fleck before the train reached Granger, and she failed to produce it when the second auditor asked for it, and also failed and refused to pay any fare for her transportation to Hillsboro and to pay fare for her son, who was about eight years old. The second auditor was told by the first auditor that Mrs. Fleck had presented to him a ticket from Houston to Hillsboro, which he had returned her. The conductor and the auditor on the train between Granger and Waco each repeatedly asked Mrs. Fleck for her ticket or fare, and also asked for fare for her son, and she continued to refuse to comply with said requests. She was told that she would have to be put off the train unless the fare was paid, and just before she reached Waco she was informed that she would be put off there. When she was told this, she tendered to the conductor or auditor 50 cents to pay the fare for her son from Waco to Hillsboro, which was less than the amount required for said fare. She testified that her niece, who was on the train with her going from Houston to Hillsboro and who was riding in the Pullman car, had all of her money except the 50 cents, and that she had left with her niece in the Pullman car more money than was required to pay the fare of herself and son to Hillsboro. She further testified:

"I didn't say that he (the second auditor) came back so many times that finally it got to a point where he said it was humiliating to me and to him. I said the third time he came back he said that to me. I understood that every time he came back he was trying to tell me that I must either give him a ticket or the money. He had come back to me several times and told me that. That was while the train was running between Smithville and Waco. * * * From the time he left Granger he was coming back to me every little while, telling me that he had to have my fare. As to whether during all that time I had abundant opportunity to go back to the Pullman if I wanted to. I had a ticket, and I had bought a ticket; I had abundant opportunity to go back to the Pullman if I wanted to. When I had an opportunity to go back to the Pullman to get money, I refused to, because I had a ticket. I didn't get the money."

The rule of the railroad company referred to in defendant's pleadings is as follows:

"Only those persons who furnish transportation, or pay fare, and children entitled to free transportation, are entitled to ride on trains authorized to carry passengers. All others are trespassers, and should be ejected from trains, as herein provided."

The special issues submitted to the jury were as follows:

"No. 1. Did or did not the defendant's auditor or conductor accuse Mrs. Fleck of lying while she was on defendant's train on the 25th day of July, 1914?

"No. 2. Did or did not the defendant's auditor or conductor accuse Mrs. Fleck of undertaking to beat her way while she was on defendant's train on the 25th day of July, 1914?

"No. 3. Did or did not defendant's auditor or conductor act towards, or talk to, Mrs. Fleck in a rude, insulting, or abusive manner while she was riding on defendant's train on the 25th day of July, 1914?

"No. 4. Did or did not Mrs. Fleck, after the conductor or auditor told her when the train reached Waco that he was going to eject her, and before she was actually ejected, say to the conductor or auditor that if he would permit her to go to her niece in the Pullman she would procure money to pay fare for both herself and children."

All four of these issues were answered by the jury in the negative. The insulting or rude language claimed by plaintiff to have

been used by defendant's employés during their 'controversy with Mrs. Fleck is that stated in the first two questions above set out. The defendant's employés denied that they used such language, or that they were in any way rude or abusive in manner or speech to Mrs. Fleck. The findings of the jury upon each of the four issues submitted to them are amply sustained by the evidence. We think these findings of the jury, supplemented by the facts established by the undisputed evidence before set out, show that plaintiffs are not entitled to recover anything against the defendant upon the cause of action alleged, and judgment was properly rendered thereon in favor of defendant.

Appellant's first assignment of error and the proposition thereunder is as follows:

"The court erred in rendering judgment for the defendant on the answers made by the jury to the four special issues submitted to them. The answers to the issues by the jury are not sufficient within themselves to authorize or justify a judgment for the defendant. These answers do not dispose of the issues of fact made by the pleadings, and are not, therefore, a proper basis for the judgment for defendant. Under the verdict of the jury the court should direct that no judgment be entered, and that the case be retried."

"We submit the foregoing assignment as a correct proposition of law, to the effect, in substance, that in every case the trial court should so submit a case to the jury as to dispose of the issues of fact raised by the pleadings and the evidence."

[1, 2] The assignment is not supported by a statement from the record, as required by the rules, and for that reason does not require our consideration; but, waiving this objection to its consideration it cannot be sustained. It may be conceded that the special findings of the jury do not dispose of all the issues made by the pleadings and evidence, yet if such findings, when considered with the facts established by the undisputed evidence, settle the question of plaintiffs' right to recover upon the case made by the pleadings, the case is disposed of, and judgment was properly rendered for the defendant.

[3] The undisputed evidence shows that Mrs. Fleck failed to produce her ticket when it was called for by the conductor and the auditor. She was informed that she must produce the ticket or pay her fare. She had the money, or could have procured it from her niece, with which to pay fare, and, though given every opportunity and repeatedly urged by the conductor and auditor to pay the fare, and told what the consequences would be if she did not, failed and refused to comply with their demand. Upon these facts her ejection from the train, if done in a proper manner, was not unlawful, and the appellee cannot be held liable for any injury or damage that she may have sustained thereby. The following quotation from the text-writers show the general rule in regard to the right of a railway company to eject a passenger who does not produce a ticket when demanded by the conductor of the train and refuses to pay fare on the ground that he has lost his ticket:

"The loss of a ticket by a passenger falls on him, not on the carrier. The reason is obvious. Passage tickets, in the absence of restrictive conditions, are assignable, and good in the hands of any one. If the loss of a ticket were a sufficient excuse for nonpayment of fare, the carrier might be subjected to the burden of carrying two or more persons for a single fare." Fetter Carr. Pass., par. 279.

"A regulation, by which passengers are required to show their tickets to the conductor whenever called upon to do so, and making it the duty of such conductor to remove from the train all passengers who refuse to do so or pay their fare, has also been held to be reasonable and proper, being necessary to prevent imposition upon the carrier by making one ticket serve as a passport for more than one passenger. And it will not matter that the conductor may know that the passenger has paid for a ticket, or that he has already seen it, or that it has been shown to him more than once, or that the passenger may offer to prove that he has it. He must show it; otherwise the conductor will be justified in expelling him, in obedience to the regulation. And when a regulation of this kind exists, if the passenger should be so unfortunate as to lose his ticket, he may be required to pay his fare again." Hutchinson on Carriers, par. 5721.

"As a general rule, a ticket (or pass) is the only evidence, as between the conductor and the passenger, of the latter's right to transportation. He must produce it when demanded, and if he has no ticket, or fails to exhibit it in accordance with the rules of the company, and refuses to pay fare, he may be expelled. The fact that he may have had a ticket, but lost it, makes no difference." Elliott on Railroads, vol. 4, par. 1594.

We believe that the rule announced in the above quotations is supported by reason and the weight of authority. The following are some of the cases in which the rule is approved and followed: Railway Co. v. Smith, 84 S. W. 852; Harp. v. Railway Co., 119 Ga. 927, 47 S. E. 206, 100 Am. St. Rep. 212; Hibbard v. Railway Co., 15 N. Y. 455; Railway Co. v. Asmore, 88 Ga. 529, 15 S. E. 13, 16 L. R. A. 53; Railway Co. v. Herring, 57 Ill. 60; Jerome v. Smith, 48 Vt. 230, 21 Am. Rep. 125; Crawford v. Railway Co., 26 Ohio St. 580; Price v. Railway Co., 46 W. Va. 538, 33 S. E. 255. In the Hibbard Case, supra, the New York Court of Appeals, in discussing this question, say:

"I am of opinion that it was lawful for this railroad company to require that persons engaging passage on its cars should show their tickets whenever required by the company's servants intrusted with that duty, upon pain of being left to travel the remaining distance in some other way in case of refusal. * * * Such regulations as will enable a railroad corporation to execute its difficult and responsible duties, insure the comfort and safety of its passengers, and protect itself from wrong and imposition, it has an undoubted right to prescribe, provided such regulations are reasonable and just. * * * By the rules and regulations of the New York & Erie Railroad Company, every passenger is required to exhibit his ticket, if he has one, to the conductor upon request, or, if he has no ticket, to pay his fare and accept one. And upon refusal * * * to comply with the regulation, it is made the duty of the conductor to remove such delinquent passenger from the cars. The regulation, it appears to me,

is not unreasonable, for the company is responsible for its unjust application, or for enforcing it with undue severity. * * * The regulation was a necessary and a reasonable one, and unless railroad passengers are above all control, they are bound to observe reasonable and proper regulations while within the cars, claiming service and the care and foresight of the company. * * * If the rule laid down by the [trial] court is correct, and the conductor has only a right to see the ticket when he has no knowledge that the fare has been paid, there is nothing to prevent a passenger, who has paid his fare with the knowledge of the conductor, from passing his ticket over to a stranger to be used as evidence that he also has paid his fare and acquired a right to be carried in the cars. The ticket is the property of the railroad company, and is a part of the means by which it conducts its business. It is delivered to the passenger to be held by him, temporarily, for a special purpose, and who, to that extent, acquires a special property in it. When the journey is ended, or about to end, it is to be redelivered to the conductor. It serves a threefold purpose: It is evidence in the passenger's hands that he has paid his fare and has a right within the cars; it insures the payment of the passage money by all who take seats; and, when it is redelivered to the company, it becomes a voucher in its hands, against the office or agent who issued it, in the adjustment of its accounts. To say that the passenger is bound to exhibit the ticket when reasonably requested, but if the conductor knew the passenger of whom the request is made had paid his fare, he had no right to enforce his request, is a contradiction in terms."

[4] The undisputed evidence in the instant case further shows that Mrs. Fleck refused to pay fare for her son, who was over five years of age, and whom she was taking with her from Houston to Hillsboro. Her refusal to pay fare for her son justified the conductor and auditor in ejecting her from the train. The boy was taken on the train by her, and was in her care and charge. The railroad company could not lawfully transport him without charge, and neither could it put him off the train and leave him with no one to care for him. In these circumstances it was the right of the company to eject Mrs. Fleck with the boy because of her refusal to pay his fare, independent of her refusal to pay her own fare. 5 Am. & Eng. Ency. of Law, 595; Railway Co. v. Hoeflich, 62 Md. 300, 50 Am. Rep. 223; Beckwith v. Railway Co., 143 Mass. 68, 8 N. E. 875.

Appellants requested the trial court to submit to the jury the following question:

"Did the defendant's auditor and conductor, or either of them, after Mrs. Fleck had been ejected from the train at Waco, refuse to permit Mrs. Fleck to enter the Pullman car for the purpose of procuring the money from her niece with which to pay the fare for herself and her boy, while knowing the purpose for which she was attempting to enter the car?"

Mrs. Fleck testified that after she had been ejected from the train she asked to re-enter the train and go into the Pullman car and get the money from her niece with which to pay the fare for herself and son, and that this request was refused. This statement was denied by the defendant's witnesses. The court refused to submit the question to the jury. We do not think the court erred in refusing appellants' request.

[5] It seems to be well settled that when a passenger has failed and refused to produce a ticket or to pay fare after having been given a reasonable opportunity to produce his ticket or pay his fare, and the train is stopped at a place other than a regular station or stopping place for the purpose of putting him off, his offer to pay fare after the process of ejectment has begun will not render his ejectment unlawful. Pease v. Railway Co., 101 N. Y. 367, 5 N. E. 37, 54 Am. Rep. 699. The general rule upon this subject is thus stated in Hutchinson on Carriers, § 1085:

"The question has frequently arisen whether, after a passenger has refused to pay the fare demanded or to produce his ticket, and the conductor has begun to eject him, or has completely ejected him, the passenger may then tender the fare or ticket required and be entitled to continue his journey upon that train. Upon this question the cases are not in harmony, but the prevailing rule, and the one supported by the better reasons, is that, even though he may once have refused to pay his fare or show his ticket, he may, at any time before the process of ejection is begun, comply with the demand and continue his journey on that train, but that where he so refuses and persists in his refusal, after being accorded reasonable time and opportunity to comply, until the conductor has the right and it is his duty to eject him, and the conductor has begun the process of ejection, either by stopping the train or applying force to the passenger when necessary, the passenger thereupon forfeits his rights as a passenger, and his ejection may be completed even though he may thereafter tender the performance demanded. The reason assigned in support of the rule is that if one passenger might, by his unjustifiable conduct, delay the train to put him off, another might do the same thing, thus producing the utmost irregularity in the running of the trains and jeopardizing the safety of the carrier's property and the lives of other passengers. As this reason would not exist when the train has stopped at a regular station, the rule has been held not to apply in that event."

It is to be observed that this difference between the effect of a belated offer to pay when the ejection occurs at a regular stopping place and when the train is stopped only for the purpose of ejecting the passenger applies only when the offer to pay the fare is made during the process of ejection and not after its completion. The trial court evidently recognized this distinction in submitting question No. 4, above set out, and refusing to submit the question requested to be submitted by appellants.

[6] There is no authority to which we have been cited or which we have found which sustains the proposition that a passenger, who has been given every opportunity to procure the money to pay his fare before ejectment, either at a station or at a place other than a station at which the train is stopped for the purpose of putting him off, has the right to demand that he be allowed to re-enter the train for the purpose of procuring money to pay his fare, which he could have procured, and was given every opportunity to procure, before his ejectment. In the case

of Railway Co. v. Bunn, 41 Tex. Civ. App. 503, 95 S. W. 640, relied on by appellants to sustain their contention, it appears that Bunn, who was ejected at a water tank on the railway for failure to produce a ticket or pay his fare, was given no opportunity before his ejection to procure the money to pay his fare from a friend who was on the train with him, and in these circumstances the court held that the conductor of the train had no right to refuse Bunn's request to re-enter the train for the purpose of procuring the money. We think the distinction between that case and the instant one is obvious. The authority cited by the court to sustain the decision in the Bunn Case (28 Am. & Eng. Ency. of Law, 168) lays down the general rule that a railroad is not required to permit a passenger who has been rightfully expelled to re-enter its train. This rule was followed by this court in the case of Railway Co. v. Turner, 23 S. W. 83.

[7] The fact that the passenger in this case is a woman in no way affects the legal questions involved. It undoubtedly made it harder for the employés of defendant to eject her in the enforcement of the rules of the company, and she was given greater consideration and a much longer time in which to comply with the rules than would have been accorded a male passenger. After the conductor and auditor had been forced by persistent refusal to do what the law clearly required of her, they were not required by any rule of law or of public policy, nor by the dictates of right and fairness, to permit her to re-enter the train upon her mere promise that she would obtain from her niece the money to pay her fare, which she had positively refused to do before her ejection. If it should be held that the court erred in refusing to submit the requested question, such error should be held to have been harmless, for the reason that the evidence fails to show that Mrs. Fleck sustained any injury because of the refusal of the conductor and auditor to permit her to re-enter the train. In a very short time after such refusal she procured money from a person who was at the station at the time of her ejectment, and took an interurban car to Hillsboro. It does not appear that there was any appreciable delay in her arrival at her destination, or that she suffered any injury of any kind by reason of her going from Waco to Hillsboro on the interurban instead of on appellee's train.

The complaint that appellee is liable to appellants for damage because when it ejected Mrs. Fleck she and her baggage and children were not put inside of the station building, but deposited several car lengths from the building, is without merit. If any rule in regard to the care and consideration due by a railroad company to its passengers be held to apply in this case, and such rule required that she be taken into the station building when she was ejected from the train, there is no evidence that she sustained any injury by the failure of the appellee's servants to comply with such rule.

[8] It appears that after the jury had held the case under consideration for several hours they came into court, and through their foreman propounded to the court in writing a question regarding the meaning of one of the expressions in the charge. This occurred about 6 o'clock in the evening. After answering the question the court told the jury that, unless they reached a verdict by 8 o'clock that evening, they would have to stay together all night. The jury then returned, and did not report again until 12 o'clock the next day, when they came into court, and reported that they had not and could not agree upon a verdict. Thereupon the court asked them if it was impossible for them to agree upon a verdict, when one of the jury spoke up and said that he thought it might be, while another said that he thought it was impossible. Upon this report being made to the court, the court said to the jury substantially as follows:

"That it has taken a long time to try this case, and that it was their duty to reason together, if possible, and to reach a verdict on the issues submitted to them. That it was expensive to try these long drawn out cases, both to the county and to the litigants, and that the jury should retire, and if possible, get together on the issues submitted to them. That the court would receive their verdict when they reached one."

The jury retired, and at 6 o'clock that evening returned a verdict into court. We do not think appellants' complaint of these remarks of the court to the jury should be sustained. The gravamen of the complaint is that these remarks "were calculated to cause members of the jury to surrender their convictions and render an improper verdict." We do not think the remarks were reasonably calculated to produce the effect claimed by appellants. These remarks are very different from the instructions given the jury in the case of Railway Co. v. Johnson, 99 Tex. 340, 90 S. W. 164, by which the jury were told that it was proper and legal for them, in order to arrive at a verdict, to make concessions, provided their verdict was based upon the law given in the charge and the facts shown by the evidence. The Supreme Court held that the term "to make concessions," as used in this instruction, should or could be taken to mean that a juror might compromise and surrender his judgment without changing his convictions or judgment on the questions in issue, and that the charge was therefore erroneous. No such meaning can be given to the remarks of the court in this case. The jury were only told that the trial of the case had taken a long time and had been expensive, and that it was their duty to reason together and agree if possible. That an instruction of this kind is not erroneous was decided by the Court of Appeals of the Fifth District in the case of Railway Co. v. Darwin, 47 Tex. Civ. App. 219, 105 S. W. 825, in which case a writ of error was

denied by the Supreme Court. The same ruling was made in the following cases: Railway Co. v. Barber, 163 S. W. 116; Commonwealth v. Peter Tuey, 62 Mass. (8 Cush.) 1; Railway Co. v. Carter, 164 S. W. 716; Watson v. Railway Co., 53 Minn. 551, 55 N. W. 742; Kelly v. Emery, 75 Mich. 147, 42 N. W. 795.

We have not discussed all of the various assignments of error presented in appellants' brief, but have considered them all, and none of them, in our opinion, should be sustained. It follows that the judgment of the court below should be affirmed.

Affirmed.

## On Motion for Rehearing.

Upon request of appellants contained in their motion for rehearing, we make the following findings of fact in addition to those contained in our opinion heretofore filed in this cause.

Mrs. Fleck testified:

"I told him (the auditor), 'I am sick, and don't bother me any more.' Seven years prior to this I was operated on in Dallas, and I have not been in good health for several years. I was again operated on eight months prior to this. I was nervous, could not sleep well at night, and was in bad condition physically. * * * It was the first time I had been able to travel for several years. The conduct of the auditor and conductor caused me great humiliation, and I was virtually prostrated for months afterwards. I have never recovered from it."

As to this shock upon her mental and physical condition and as to her health being bad at the time, the testimony of Dr. Lunn in every respect corroborates her statements, and it shows that he performed the second operation, and that she had been a sick woman from that day up to the time she was ejected from the car, and for many weeks thereafter.

Campbell testified:

"Mrs. Fleck was ejected four car lengths, 80 feet each, from the waiting room. I did not assist her and her children to the waiting room."

Defendant's rules read as follows:

"Aged, infirm, crippled, intoxicated, feebleminded, and sick persons and women and children shall be put off at a station, which is then open, and there placed in the custody and charge of the station agent to prevent their suffering from exposure or accident."

Mrs. Fleck further testified:

"I was then very nervous. I was suffering both mental pain and anguish. I could not keep from crying. I picked up my two grips, and with my two children, while crying, shivering and shaking, started to the defendant's depot. It was a hot summer day, and the grips were heavy, and I had to walk and carry my grips with the children following. I saw a policeman, and another gentleman, and approached them. I asked them to intercede for me with the conductor; they told me they could do nothing with him; then one of the gentlemen volunteered to let me have the money and carried me to the interurban station."

[9] The foregoing testimony which is copied from appellant's testimony is undisputed. The undisputed evidence further shows,

however, that the train was stopped, and Mrs. Fleck ejected at the place at said station where the train usually stopped and passengers disembarked. Appellants insist that the facts shown by this testimony required the court to submit to the jury the question of whether "the defendant's servants rendered the plaintiff, Mrs. Fleck, and her children such assistance and accommodation as was required by defendant's rules and as the circumstances of the case demanded," and that the failure to submit such issue was material error.

We cannot agree in this contention and do not deem it necessary to add anything to what is said upon this subject in our opinion heretofore filed herein. We have duly considered the motion for rehearing, and find nothing to justify a change in the conclusions expressed in our former opinion. The motion is overruled.

Overruled.